[No. 19552. Department Two. January 27, 1926.]

THE STATE OF WASHINGTON, *on the Relation of
Donald H. Clark et al., Appellants,* v. THE
CITY OF SEATTLE *et al., Respondents.*[1]

[1] MANDAMUS (35, 36)—To OFFICERS—MATTERS OF DISCRETION—CON-
STRUCTION OF BRIDGE. Rem. Comp. Stat., § 1014, providing for
writs of mandamus to any inferior tribunal to compel the per-
formance of any act especially enjoined by law, relates to the
performance of ministerial duties, and does not warrant a writ
to compel a city to rebuild a burned bridge, especially where the
construction would amount to a new improvement; since the
matter is one of discretion, in view of a probable deficiency in
the budget, and other legislative problems as to the time, place,
nature of, and necessity for, the improvement.

Appeal from a judgment of the superior court for
King county, Paul, J., entered May 18, 1925, upon
granting a nonsuit, dismissing an action in mandamus
to compel a city to reconstruct a burned bridge. Af-
firmed.

*Elias A. Wright* and *Sam A. Wright (Joseph B.
Smith,* of counsel), for appellants.

*Thomas J. L. Kennedy, George A. Meagher,* and
*A. C. Van Soelen,* for respondents.

MITCHELL, J.—On and prior to June 30, 1924, there
was in use by the public a wooden trestle bridge or
viaduct, crossing a valley in a diagonal direction, from
Fifteenth avenue west to Thorndyke avenue in Seattle,
commonly known as the West Wheeler street bridge.
It was some 2,400 feet long, and was intersected by
a branch bridge or viaduct. It was elevated above the
ground about forty feet, and, where it crossed certain
railroad tracks, it was supported by trusses raised
on pile piers. It had been built under ordinances of

¹Reported in 242 Pac. 966.

the city, passed in 1910, and was paid for upon the local improvement district plan, that is, the property found to be specially benefited was assessed to pay a part of the cost of the bridge. On June 30, 1924, the central portion of the bridge, including the intersection with the branch bridge, was destroyed by accidental fire, leaving the ends—parts of which are in good condition, other parts in poor condition. Over fifty per cent of the bridge in length was burned. The destruction of it inconvenienced the inhabitants of quite a section of the city, who, since that time, have been compelled to use another bridge, less convenient and accommodating, over the valley. Parties more immediately interested, and whose property was assessed to pay in part the cost of the improvement, petitioned the city council to repair or rebuild the bridge.

It does not clearly appear that the city has affirmatively declined to rebuild it, but it is clear that it has not taken any active steps to do so. It rather appears that the city is considering the question of the construction of some kind of a bridge over the same valley, with reference to the needs of the persons complaining, as well as the needs of others, who, altogether, will constitute a larger district to be accommodated. Unwilling to submit to further delay, the plaintiffs, who were inconvenienced by the loss of the bridge, on behalf of themselves and others similarly situated, instituted in the superior court this action in mandamus against the mayor and members of the city council, to compel them to repair or reconstruct the bridge. The action was commenced in February, 1925. Upon the trial of the case, the relators introduced evidence going to establish the facts above mentioned. They also introduced evidence as to other

facts, the most of which, however, we think are not important in our view of the case. At the conclusion of the testimony on behalf of the relators, a motion on the part of the respondents for a nonsuit or dismissal of the action was granted, on the broad ground that the court would not direct, by mandamus, the legislative and discretional activities of the city government and compel the expenditure of moneys therefor; the court expressing the further view, in the nature of a finding, that there was an absence of any showing that the city authorities were guilty of any arbitrary conduct. The relators in the superior court have appealed from a judgment dismissing the action.

[1] The statute, § 1014, Rem. Comp. Stat., provides for the issuance of a writ of mandamus "to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station," etc. It relates to the performance of a ministerial duty, and not to a duty or power which requires the exercise of discretion. To say, in this case, that the court can compel the city to substantially reconstruct this bridge, would be going entirely beyond any authority we find in the law. "There is no common law liability on municipal authorities in respect to the repairs of bridges within their limits." Dillon, Municipal Corporations (5th ed.), § 1157; Elliott on Roads and Streets (3d ed.), § 59. The statute, § 8966, Rem. Comp. Stat., governing cities of the first class says:

"Such city shall have power . . . 12. To construct and keep in repair bridges, viaducts and tunnels, and to regulate the use thereof, . . . "

The charter of the city, Art. IV, § 18, provides:

"The city council shall have power by *ordinance*

*and not otherwise* . . . Twelfth. To construct and keep in repair bridges, viaducts and tunnels and to regulate the use thereof.''

These legislative and charter expressions deal with power. The exercise of them is legislative, or discretional, and not ministerial. These are the only provisions of the law that have been called to our attention, or that we are advised of having direct bearing upon the matter before us.

Counsel for appellants concede that the building of a new bridge would be discretionary. They say:

''There is no contention on behalf of the relators that they could compel the city to construct, as a new improvement, any particular improvement, because in law this would be compelling them to exercise discretion.''

We think that is the situation here. To reconstruct more than fifty per cent of the length of the bridge, which includes what appears to be the most expensive part of it, and repair the remaining ends of the bridge, parts of which are in poor condition, would be, in effect, the same as the construction of a new improvement, when we come to consider the question of the discretion of the municipal authorities. There is a line of cases relating generally to highways, with reference to the subject of obstructions or nuisances, which holds it to be the duty of public authorities to remove obstructions and keep the highways free. Such was the case of *State ex rel. Reynolds v. Hill*, 135 Wash. 442, 237 Pac. 1004, a case wherein, by a general demurrer, it was admitted that it was the duty of the city to keep its streets free from obstruction. And while it is true that, in that case, the statute conferring power and authority upon the city was referred to, it is manifest that the gist and spirit of the decision and

result reached rest upon the implied, or inferred duty, growing out of the power conferred to remove obstructions in the nature of nuisances from highways actually in use, out of consideration for the safety of the public. In this case there is no question of obstruction or nuisance; a bridge, if one were in existence and might be termed a highway, does not exist; the safety of the public is not involved; there is no travel.

There are authorities, many of which are cited by appellants, which hold as stated in 18 R. C. L., § 165, p. 240, that

"Mandamus is generally recognized as a proper remedy to compel public officers to perform their duty to take care of and keep in repair public highways, bridges and the like, whenever the necessity for its exercise is so apparent and obvious that the refusal to act is the result of a determination not to discharge a plain duty."

That has reference to the arbitrary refusal to perform a plain duty. In some jurisdictions it is, by specific enactment, made the duty of public officers to keep highways in repair. The case of *Brokaw v. Commissioners of Highways of Bloomington Township,* 130 Ill. 482, 22 N. E. 596, cited by appellants, was a nuisance case. In that case, the court said:

"The language of 71 is 'that the commissioners, after having given reasonable notice, . . . may remove any such fence or other obstruction,' etc. We think it was intended by the statute to impose upon the commissioners the imperative duty of removing obstructions from the public highway, and that the word 'may' is to be considered as 'shall.'"

Nor does the fact that the city may be held liable for injuries resulting in damage, because of failure to keep the bridge in repair, have any important bearing on the inquiry. This is very well reasoned in the case

of *Leonard v. Wakeman*, 120 Iowa 140, 94 N. W. 281, as follows:

"In support of their contention, counsel for appellants cite a line of cases commencing with *Wilson & Gustin v. Jefferson County*, 13 Iowa 181, wherein the doctrine is announced that a county may be held liable for injuries, resulting in damage, caused either by defective construction of bridges, involving negligence, or negligence in failing to keep the same in repair. The authority of these cases is not to be doubted, but the principle involved has no application here. In its broadest signification the rule of the cases cited is authority only for the proposition that the county may be held liable for specific damages proven, if its governing board shall be negligent in connection with the matter of building a bridge, or, having elected not to rebuild or repair a certain bridge, if it shall be negligent in not taking necessary precaution to warn and protect innocent and unwary travelers from a dangerous condition left existing in connection therewith. The duty enjoined is that general duty which the law places upon the shoulders of every one that he use instrumentalities in his charge, or under his control, so that the same shall not become a menace to the lives and property of others. Manifestly, such rule has no relation to the doctrine announced in *State v. Morris, supra.* The essence of the holding in that case is that in the matter of building and repairing bridges, the duty devolving upon county boards is a discretionary one; that it is a duty which it owes to the public generally, and not to an individual, or any class of individuals, and that the exercise thereof cannot, therefore, be controlled by a resort to the courts."

While it appears that the city has in its general fund probably enough money to reconstruct the bridge, it was shown that all such funds, under the budget plan of the city, were required, and probably insufficient, to meet expenditures already contemplated and specified, and that there were no funds applicable or available for the present project. We mention this, as having a

bearing on the question of the matter of discretion in the municipal authorities, in their determination of whether this improvement shall be made.

Some of the statements of the general rule, which we think applicable in this state and controlling in the present case, are as follows:

"It is a frequently asserted and universally recognized rule that mandamus only lies to enforce a ministerial act or duty; in this sense a ministerial duty may be briefly defined to be some duty imposed expressly by law, not by contract or arising necessarily as an incident to the office, involving no discretion in its exercise, but mandatory and imperative. The distinction between merely ministerial and judicial and other official acts is that where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial." 18 R. C. L. (Mandamus), p. 116.

"In this country the duty to maintain and repair bridges is usually imposed by statute and in the absence of a statutory provision towns have been held to be under no obligation to construct or repair bridges, because no common law obligation attaches to them." 4 R. C. L. (Bridges), p. 215.

".  .  . On the theory that both the question as to whether bridges are to be erected as well as to whether they shall be maintained is a matter intrusted to the discretion of the public officers, it has been held that mandamus will not lie to compel county officers [and city officers] to repair a bridge. Where the doing of an official act requires the expenditure of money, performance will not as a general rule be coerced by mandamus in the absence of a showing that the money therefor is presently available, and this rule would seem to be fully applicable to the issuance of a mandate to compel the repair of highways and the like." 18 R. C. L. (Mandamus), pp. 241, 242.

"Bridges are usually part of the street or highway. In this country the power of municipal corporations to build them, and their authority over them, are wholly statutory, and their duties in respect to them are either prescribed by statute or spring from their powers. There is *no common-law responsibility* on municipal corporations in respect to the repair of bridges within their limits; but where bridges are part of the streets, and built by the municipal authorities under powers given to them by the legislature, *they are liable for defects therein,* on the same principles and to the same extent as for defective streets . . . " Dillon, Municipal Corporations (5th ed.), § 1157.

"Statutes granting authority to improve, and providing means for paying the cost of the improvement, are not considered as mandatory in such a sense, at least, as to deprive the highway officers of the discretionary power. Thus the grant of authority to construct and repair sidewalks and assess the expense against the abutters does not create an imperative duty. So a grant of authority to remove all obstructions in a harbor does not impose upon the local officers a duty that they are imperatively bound to perform. Nor does a grant of authority to 'construct sewers' deprive the local officers of discretionary powers, and impose upon them a duty that can be coerced by mandamus, or which will constitute the foundation for a private action for damages. The rule deducible from the adjudged cases is, that the grant of authority to make an improvement, unaccompanied by mandatory words commanding it to be made, vests in the highway officers a discretionary power, and no action will lie for a mere failure or refusal to exercise this power." Elliott, Roads and Streets (3d ed.), vol. 1, § 574, p. 633.

Some of the decisions of the courts to the same effect are, *Ward v. Commissioners of Beaufort Co.,* 146 N. C. 534, 60 S. E. 418, 125 Am. St. 489; *Leonard v. Wakeman,* 120 Iowa 140, 94 N. W. 281; *Patterson v. Taylor,* 98 Ga. 646, 24 S. E. 771; *Clay City v. Roberts,* 30 Ky.

Law 820, 99 S. W. 651; *State ex rel. Ellis v. Switzer,* 79 Neb. 78, 112 N. W. 297; *Glenn v. Moore County Comm'rs,* 139 N. C. 412, 52 S. E. 58; *State v. Justices of Wayne County,* 108 Tenn. 259, 67 S. W. 72.

The writ cannot be used for the purpose of compelling the performance of a duty which requires the exercise of discretion. *State ex rel. Hawes v. Brewer,* 39 Wash. 65, 80 Pac. 1001, 109 Am. St. 858, 4 Ann. Cas. 197.

Whether the burned bridge should be rebuilt at this or some other nearby point, more serviceable to the district complaining, or a larger one comprising it, whether the money should be raised by special assessment or paid out of the general fund, after provision therefor made and the funds available, and, also, as to whether the complaining parties shall be compelled, temporarily or permanently, to suffer the inconvenience of using another bridge for access to the city, are legislative questions, intrusted to the city authorities, with which the courts have no right to interfere.

Affirmed.

TOLMAN, C. J., MAIN, MACKINTOSH, and PARKER, JJ., concur.