[No. 29684. Department One. February 28, 1946.]

THE CITY OF HOQUIAM, *Appellant,* v. GRAYS HARBOR COUNTY
*et al., Respondents.*[1]

*James P. H. Callahan,* for appellant.

*Donn F. Lawwill,* for respondents.

MILLARD, J.—This action was instituted by the city of
Hoquiam to permanently enjoin and restrain Grays Harbor
county and other defendants, who constitute the board of
county commissioners of said county, from discontinuing the
operation, maintenance, and repair of the Eighth street
bridge in plaintiff city. The appeal is from the judgment of

[1]Reported in 166 P. (2d) 461.

dismissal, rendered upon plaintiff's refusal to plead further after a demurrer had been sustained to the complaint.

The complaint alleges that, some years prior to November 8, 1926, appellant constructed a substantial drawbridge over the Hoquiam river, which is a navigable stream. The bridge, which is known as the "8th Street Bridge," is located between Eighth street at its intersection with Levee street on the southerly end, and the intersection of Riverside avenue with Sixteenth street on the northerly end thereof, all within the limits of the city of Hoquiam. Appellant city, from and after the construction of the bridge, operated, maintained, and repaired same until November 8, 1926. This bridge, which connects with the county highway, serves a large population and cares for a substantial amount of the heavy traffic on State Highway No. 9 running through Hoquiam.

In compliance with the mandate of the electors of Grays Harbor county, expressed at an election held November 2, 1926, pursuant to the provisions of chapter 103, p. 154, Laws of Extraordinary Session of 1925 (Rem. Rev. Stat., § 6523-1), Grays Harbor county, on November 8, 1926, assumed and took over the operation, maintenance, and repair of the bridge.

In latter part of the year 1944, respondents notified appellant that, on January 1, 1945, they would discontinue the operation, maintenance, and repair of the bridge. If respondents' proposed action becomes effective, the bridge will be closed to traffic, as appellant is financially unable to maintain the bridge, and a large part of the population in the western part of Grays Harbor county will be seriously damaged and discommoded.

Counsel for appellant contends that, under the provisions of chapter 103, p. 154, Laws of Extraordinary Session of 1925, respondents assumed, in 1926, a mandatory obligation to operate and maintain the bridge in question, and that that mandatory obligation was specifically preserved in the repeal section (§ 69) and the saving clause (§ 74) of chapter 187, pp. 777, 780, Laws of 1937 (Rem. Rev. Stat., Vol. 7A, §§ 6450-69, 6450-74 [P.P.C. §§ 602-1, 602-11]), which re-

pealed chapter 103, Laws of Extraordinary Session of 1925.

Chapter 103, p. 154, Laws of Extraordinary Session of 1925, reads as follows:

"SECTION 1. Any bridge across navigable waters or streams, now constructed or which may hereafter be constructed within the corporate limits of any city or town in second or third class counties of the State of Washington, which bridge is essential to the highway system of such county, may be operated, maintained and repaired by and at the expense of the county as provided in this act.

"SEC. 2. At any general election or any special election called for that purpose, the board of county commissioners of any such county may, or on petition of ten per cent of the qualified electors of such county, based on the total vote cast in the next preceding general county election, shall, by resolution, submit to the voters of such county a proposition of operation, maintenance and repair of such bridges by and at the expense of the county. Such petition shall be filed with the county auditor who shall within fifteen days examine the signatures thereon and certify to the sufficiency or insufficiency of the petition in accordance with the requirements of this act, and for such purpose the county auditor shall have access to all registration books in the possession of officers of any incorporated city or town in such county. If the petition be found to be insufficient it shall be returned to the persons filing the same, who may amend or add names thereto for a period of ten days, when same may be returned to the county auditor, who shall have an additional fifteen days to examine the same and attach his certificate thereto. No person having signed such petition shall be allowed to withdraw his name therefrom after the filing of the same with the county auditor. Whenever such petition shall be certified by the county auditor as sufficient he shall forthwith transmit the same with his certificate of sufficiency attached thereto to the board of county commissioners, who shall submit such proposition to the voters at the next biennial election, or, if such petition so requests, the board of county commissioners shall at their first meeting after the presentation to them of such petition, by resolution, call a special election to be held not less than thirty nor more than sixty days from the date of such meeting. The manner of conducting and voting, notices, officials, qualification of electors, opening and closing of polls, keeping the poll lists, canvassing the votes, declaring the result and certifying the returns shall be the same as provided by

law for the general biennial county election. The notices of such election shall state the proposition to be voted upon, and in submitting the question to the voters for their approval or rejection the proposition shall be spread upon the ballot in substantially the following form:

> Shall the county of ...............................maintain, operate and repair at its own cost and expense such bridges across navigable waters or streams within the corporate limits of all cities and towns in said county, as are essential to the highway system of said county?    Yes ☐  No ☐

"SEC. 3. If a majority of the voters at such election shall vote in favor of the proposition submitted with respect to such bridges, the board of county commissioners shall, at its next regular meeting following the canvass of the returns of such election, create and establish a fund from which shall be paid the expenses of operation, maintenance and repair of such bridges. The board shall at said meeting adopt a resolution that the county is ready to assume the operation, maintenance and repair of such bridges, and shall forthwith transmit a copy of such resolution to the city council of each city in which such a bridge is located, and thereafter the county shall assume the operation, maintenance and repair of such bridges, and for that purpose may issue warrants against such fund, such warrants to be taken up and paid in the regular order of their issuance when there is sufficient money in said fund therefor. Such board of county commissioners shall thereafter each year, at the time of preparing the budget for the next succeeding year, provide for the expense of operation, maintenance and repair of such bridges and shall levy a tax for such purpose on all the taxable property of the county not exceeding one and one-half mills in any one year.

"SEC. 4. Nothing in this act shall be construed as authorizing any county to construct or build any bridge or bridges within the corporate limits of any city or town.

"SEC. 5. Whenever any city or town located in any second or third class county of the State of Washington shall hereafter desire to construct any bridge over any navigable waters or streams in such city or town, the city or town officials shall submit plans and specifications thereof to the state highway engineer, and no such bridge shall hereafter be constructed except in accordance with plans and specifications approved by the state highway engineer."

The foregoing statute prescribed the procedure by which any county could assume the duty of operating, maintaining, and repairing bridges across navigable waters or streams, within the corporate limits of any city or town in second or third class counties, when such bridge was necessary to the highway system of such county. Section 3 of chapter 103, Laws of Extraordinary Session of 1925, was amended by chapter 99, p. 286, Laws of 1931, to permit counties to reconstruct bridges, as well as to operate, maintain, and repair same, within corporate limits of cities and towns.

By the Washington state aid highway act (chapter 187, p. 749, Laws of 1937), the authority of county commissioners to construct, improve, repair, and maintain bridges within any incorporated city or town was further changed. The pertinent section of the statute reads as follows:

"SEC. 30. The boards of county commissioners of the several counties are hereby empowered to expend funds from the county road fund of their county for the construction, improvement, repair, and maintenance of any bridge upon any city street within any incorporated city or town in such county where such city street and bridge are essential to the continuation of the county road system of such county. Such construction, improvement, repair or maintenance shall be ordered by resolution and proceedings conducted in respect thereto in the same manner as in this act provided for the laying out and establishing of county roads by counties, and the preparation of maps, plans and specifications, advertising and award of contracts therefor shall be as provided in this act." (Rem. Rev. Stat., Vol. 7A, § 6450-30 [P.P.C. § 609-23]).

It will be noted that the power granted by § 30, *supra,* to the boards of county commissioners to expend funds from the county road fund of their county for the construction and operation of a bridge, upon any city street within any incorporated city or town in such county, if such city street and bridge are essential to the continuation of the county road system of such county, is discretionary and not mandatory.

By § 69, chapter 187, Laws of 1937, which reads as follows,

chapter 103, Laws Extraordinary Session of 1925, was repealed in its entirety:

"SEC. 69. The following acts and parts of acts be and the same are hereby repealed:

". . . chapter 103, Laws of Extraordinary Session of 1925 . . . . chapter 99, Session Laws of 1931 . . . relating to the operation, maintenance and repair of bridges within corporate limits of cities and towns of counties of the second and third class . . . *Provided,* That franchises, rights or obligations in existence at the time of taking effect of this act be and the same are hereby preserved in accordance with the terms thereof."

The saving clause, § 74, of chapter 187, Laws of 1937, reads as follows:

"This act shall not affect any act done, ratified, or confirmed, or any right accrued, vested or established, or any action or proceeding had or commenced in any civil or criminal cause, before this act and its respective provisions take effect, and any such acts done, ratified or confirmed and any rights accrued, vested or established shall be preserved and any such actions or proceedings may be prosecuted and continued with the same effect and under the same provisions of the law in effect at the time such act was done, ratified or confirmed, or right accrued, vested or established or action or proceeding had or commenced."

■ Under the provisions of chapter 103, Laws Extraordinary Session 1925, respondents were authorized by the legislature to assume the duty of operating, maintaining, and repairing, at the expense of the county, the bridge in question, if a majority of the electors of the county at an election called for that purpose so voted. The legislature had the constitutional power to limit or take away the authority granted by it. *State ex rel. Bellingham School Dist. v. Clausen,* 109 Wash. 37, 186 Pac. 319. As a result of the election held in Grays Harbor county in 1926, no person or municipal corporation became vested with any contractual rights.

The county, as an agency of the state, operated the bridge under authority granted to it by the state. By enactment of chapter 187, Laws of 1937, the legislature clearly stated that, from the effective date of that statute, the county

would not be required to operate bridges within the limits of cities in such county, but that the continuance of such operation was a matter within the discretion of the board of county commissioners.

■ Chapter 187, Laws of 1937, which repealed chapter 103, Laws of Extraordinary Session of 1925, did not impair the obligation of any contract. No contractual or vested right of appellant was involved in the repeal of chapter 103, Laws of Extraordinary Session of 1925. The election in 1926 did not create a franchise right in favor of appellant or vest it with contractual rights. In *Adams v. Ernst,* 1 Wn. (2d) 254, 95 P. (2d) 799, plaintiff had been granted old age assistance, under the provisions of chapter 182, p. 855, Laws of 1935. The law was amended by chapter 25, p. 80, Laws of 1939 (Rem. Rev. Stat. (Sup.), § 9998-1a [P.P.C. § 921-57]), which changed the basis on which claims were allowed. Plaintiff claimed a vested right under the 1935 statute to receive assistance. In denying the claim, we used the following language, which is apt in the case at bar:

"We think that the 1935 act did nothing more than to confer upon a certain class of persons a statutory privilege entitling them to receive assistance from the state under the provisions of that act. However, if that privilege is to be dignified by calling it a right, it is one which, by the very act which created it, is expressly subject to amendment or repeal. It is not a vested right in the sense that it is property or that it has become fixed and of which the beneficiary cannot be deprived without his consent; rather is it a qualified right, contingent upon the continued existence of the law which gave it original substance."

In *State ex rel. Clark v. Seattle,* 137 Wash. 455, 242 Pac. 966, 46 A. L. R. 253, we affirmed judgment, upon granting a nonsuit, dismissing an action in mandamus to compel a city to reconstruct a burned bridge. The statute, Rem. Comp. Stat., § 8966 (now Rem. Rev. Stat., § 8966 [P.P.C. § 364-11]), governing repair of bridges by cities reads as follows:

"Such city shall have power . . . 12. To construct and keep in repair bridges, viaducts and tunnels, and to regulate the use thereof, . . ."

We held that the foregoing legislative expression dealt with power, the exercise of which is legislative, or discretionary, and quoted with approval the following as having a bearing on the question of the matter of discretion in the municipal authorities in their determination whether the burned bridge should be reconstructed:

" 'It is a frequently asserted and universally recognized rule that mandamus only lies to enforce a ministerial act or duty; in this sense a ministerial duty may be briefly defined to be some duty imposed expressly by law, not by contract or arising necessarily as an incident to the office, involving no discretion in its exercise, but mandatory and imperative. The distinction between merely ministerial and judicial and other official acts is that where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial.' 18 R. C. L. (Mandamus), p. 116.

" 'In this country the duty to maintain and repair bridges is usually imposed by statute and in the absence of a statutory provision towns have been held to be under no obligation to construct or repair bridges, because no common law obligation attaches to them.' 4 R. C. L. (Bridges), p. 215.

" ' . . . On the theory that both the question as to whether bridges are to be erected as well as to whether they shall be maintained is a matter intrusted to the discretion of the public officers, it has been held that mandamus will not lie to compel county officers [and city officers] to repair a bridge. Where the doing of an official act requires the expenditure of money, performance will not as a general rule be coerced by mandamus in the absence of a showing that the money therefor is presently available, and this rule would seem to be fully applicable to the issuance of a mandate to compel the repair of highways and the like.' 18 R. C. L. (Mandamus), pp. 241, 242.

" 'Bridges are usually part of the street or highway. In this country the power of municipal corporations to build them, and their authority over them, are wholly statutory, and their duties in respect to them are either prescribed by statute or spring from their powers. There is *no common-law responsibility* on municipal corporations in respect to the repair of bridges within their limits; but where bridges

are part of the streets, and built by the municipal authorities under powers given to them by the legislature, *they are liable for defects therein,* on the same principles and to the same extent as for defective streets . . .' Dillon, Municipal Corporations (5th ed.), § 1157.

" 'Statutes granting authority to improve, and providing means for paying the cost of the improvement, are not considered as mandatory in such a sense, at least, as to deprive the highway officers of the discretionary power. Thus the grant of authority to construct and repair sidewalks and assess the expense against the abutters does not create an imperative duty. So a grant of authority to remove all obstructions in a harbor does not impose upon the local officers a duty that they are imperatively bound to perform. Nor does a grant of authority to "construct sewers" deprive the local officers of discretionary powers, and impose upon them a duty that can be coerced by mandamus, or which will constitute the foundation for a private action for damages. The rule deducible from the adjudged cases is, that the grant of authority to make an improvement, unaccompanied by mandatory words commanding it to be made, vests in the highway officers a discretionary power, and no action will lie for a mere failure or refusal to exercise this power.' Elliott, Roads and Streets (3rd ed.), vol. 1, § 574, p. 633."

The judgment is affirmed.

Driver, C. J., Steinert, Simpson, and Mallery, JJ., concur.

---

April 5, 1946. Petition for rehearing denied.