[No. 10226–5–I.   Division One.   June 21, 1982.]

WILLIAM J. BURG, ET AL, *Respondents*, v. THE
CITY OF SEATTLE, *Appellant*.

*Douglas N. Jewett, City Attorney,* and *J. Roger Nowell, Assistant,* for appellant.

*Weinrich, Gilmore & Adolph, P.S.,* and *Robert J. Adolph,* for respondents.

SWANSON, J.—*Quaere:* Does a writ of mandamus lie to compel a municipality to repair a street partially closed by a landslide and to restore 4–wheeled vehicular access of certain homeowners to their property abutting on such a street? We answer in the negative and reverse.

After waiting more than 9 months for the City of Seattle to repair the damage caused by a landslide which resulted in the partial closure of the street which provides the only access to their homes, residents of Perkins Lane West (the Burgs, the Silvermans, Adolph, Hartnagel and Lint) sued for monetary damages and for a writ of mandamus to force the City to repair the street immediately. The trial court granted a partial summary judgment directing the issuance of a writ of mandamus ordering the City to "take immediate steps to repair and restore Perkins Lane West at the location of the land slide, so as to provide regular four–wheeled vehicular traffic."[1] The trial court also determined

---

[1]The claim for damages was expressly reserved for trial. The judgment states in pertinent part, "the entry of this Order shall not affect or otherwise dispose of any of plaintiffs' claims for damages, including reasonable attorneys' fees, which currently exist or which may hereafter arise resulting from the earthslide or failure of the City to effectuate repairs; . . ."

that the repair of the slide–damaged portion of Perkins Lane West is a ministerial duty of the City, that the slide and the City's failure to repair and reopen the roadway to travel create an emergency situation which threatens the life, health and safety of the affected residents, and that the City may neither abandon nor vacate the road nor require the property owners to share the cost of repair or a portion of the cost by a special assessment or otherwise.[2]

The City contends that a writ of mandamus is an inappropriate remedy in this situation and cannot be issued to compel a city to repair a damaged public street in the absence of a strict statutory duty ministerial in character. The City argues that there is no duty clearly imposed upon it to repair or restore its streets and that the exercise of any such responsibility is discretionary in character.

The material facts are not in dispute and are as follows: Perkins Lane West is a narrow road winding midway along the precipitous western face of Magnolia Bluff which rises above Puget Sound in Seattle. The portion of the road involved in this case lies within Carleton Beach Tracts, a land addition to the City of Seattle which was platted, dedicated, and accepted in 1928. A few years later under local improvement district procedures, the road was improved by grading and curbing. Perkins Lane West, which comes to a dead end to the south, is the sole access road for the respondent landowners whose homes abut the road along its southerly termination point.

From 1933 until 1980 the road has been plagued by landslides requiring periodic repairs. After each landslide

---

[2]The order appealed from provides:

"IT IS ORDERED, that a Writ of Mandamus should be and the same hereby is entered requiring the City of Seattle to take immediate steps to repair and restore Perkins Lane West at the location of the land slide, so as to provide regular four–wheeled vehicular traffic. The repairs shall be commenced immediately and completed as quickly as possible unless the City shows good cause before this court why the repairs cannot be accomplished in this manner, and shall, furthermore, promptly report to this court the method by which it shall effectuate the repairs, and otherwise keep the plaintiffs and the court informed of all pertinent matters; . . ."

the City routinely filled the slide area and repaired the road. On January 12, 1980, a more severe landslide damaged the road, rendering a section of the roadway in the 1900 block dangerous for automobile traffic. This slide occurred through natural forces and was not the result of any act of the City.

Because of the potential danger, the City closed the road to automobiles from the slide area south. This closure allows respondents access to their homes only by foot or by bicycle. The road closure also hinders police and fire protection, utility service and emergency vehicles. The City hired an engineering firm to survey the damage and to recommend methods of repairs. On September 2, 1980, the engineering firm issued a report which concludes that repair of the roadway is feasible and practicable because the January 12 landslide was caused by surface sloughing of "accumulated slope wash materials and underlying native soils." Repairs are estimated at a cost of $137,000 to $231,500 depending upon the method utilized. The firm's report recommends that remedial work be done in July or August.

The City gave the repair work on Perkins Lane West a low priority, considering the work a capital improvement for which the City did not have available funds. Consequently, the landowners brought suit. A partial summary judgment was granted, and this appeal followed.

The grounds for the issuance of a writ of mandamus are stated in RCW 7.16.160 which provides,

> It may be issued by any court . . . to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person.

We note preliminarily that a writ of mandamus is an extraordinary remedy and should be used sparingly and

will not be granted where there is a plain, speedy, and adequate remedy in the ordinary course of law. *See* RCW 7.16.170. It is uniformly held that mandamus may not be used to compel public officers or administrative bodies to perform acts or duties which require the exercise of discretion. *Lillions v. Gibbs,* 47 Wn.2d 629, 633, 289 P.2d 203 (1955); *State ex rel. Ryder v. Pasco,* 3 Wn. App. 928, 478 P.2d 262 (1970). Mandamus will only be used to compel the performance of a duty enjoined by law, *Adams v. Seattle,* 31 Wn.2d 147, 151, 195 P.2d 634 (1948), or where there is a clear duty to act. *State ex rel. Burlington N., Inc. v. State Utils. & Transp. Comm'n,* 93 Wn.2d 398, 609 P.2d 1375 (1980). The general rule governing the use of mandamus to compel a municipality to repair its streets is stated in 17 E. McQuillin, *Municipal Corporations* § 51.42, at 561–62 (3d ed. 1968):

> Mandamus will lie, it has been held, to compel a municipality or its officers to repair a public way when the duty to do so is ministerial and clearly imposed by law, provided, it may be added, they have funds on hand or under their control for such purpose.

(Footnotes omitted.)

Our first inquiry therefore is directed to the nature of the action ordered—is it discretionary or ministerial in character? A particularly lucid definition of a ministerial duty as distinguished from a discretionary function is found in *State ex rel. Clark v. Seattle,* 137 Wash. 455, 461, 242 P. 966 (1926):

> "It is a frequently asserted and universally recognized rule that mandamus only lies to enforce a ministerial act or duty; in this sense a ministerial duty may be briefly defined to be some duty imposed expressly by law, not by contract or arising necessarily as an incident to the office, involving no discretion in its exercise, but mandatory and imperative. The distinction between merely ministerial and judicial and other official acts is that where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of dis-

cretion or judgment, it is not to be deemed merely ministerial."

(Citation omitted.) A discretionary function was defined in *Moloney v. Tribune Pub'g Co.,* 26 Wn. App. 357, 360, 613 P.2d 1179 (1980):

> A discretionary function is one involving a basic governmental policy, program, or objective requiring the exercise of a basic policy evaluation, judgment, and expertise on the part of the officer or agency; it is essential to realization of the policy and within the proper authority and duty of the officer or agency.

(Citations omitted.)

Mandamus as authorized by RCW 7.16.160 will issue only in relation to the performance of a ministerial duty and not for a duty or power which requires the exercise of discretion. *State ex rel. Clark v. Seattle, supra* at 457. Consequently, our Supreme Court determined that the question of whether a washed–out county road was necessary for public convenience involved the exercise of discretion which required the county commissioners to take into consideration

> the needs of other roads in the county, the cost of the improvement, the practicability of reconstructing the road, the extent of the use of it were it repaired, the amount of funds available, and so forth.

*State ex rel. Good Hope Gold & Copper Mining & Dev. Co. v. Morgan,* 117 Wash. 214, 216, 200 P. 1085 (1921). Therefore the *Morgan* court held that mandamus would not lie to compel repair of the county road. Similarly, our Supreme Court determined that a Grays Harbor County commissioner's decision to close a bridge serving a substantial number of Hoquiam residents was discretionary in character and not mandatory even though a statute authorized the expenditure of county funds for the construction and operation of a bridge within the city. *Hoquiam v. Grays Harbor Cy.,* 24 Wn.2d 533, 166 P.2d 461 (1946). Our Supreme Court has also held that mandamus did not lie to compel the City of Seattle to reconstruct a fire damaged

bridge, even though the destruction of the bridge inconvenienced the residents of a substantial section of the city. *State ex rel. Clark v. Seattle, supra.* As in the present case, the City did not affirmatively decline to rebuild the bridge but simply had not taken any active steps to do so. The City was considering the question of the kind of bridge to construct. Plaintiffs were not willing to wait because of the inconvenience caused by the loss of the bridge and so commenced an action to compel the City to repair or reconstruct the bridge. In affirming the trial court's decision denying mandamus, the *Clark* court said at page 463:

> Whether the burned bridge should be rebuilt at this or some other nearby point, more serviceable to the district complaining, or a larger one comprising it, whether the money should be raised by special assessment or paid out of the general fund, after provision therefor made and the funds available, and, also, as to whether the complaining parties shall be compelled, temporarily or permanently, to suffer the inconvenience of using another bridge for access to the city, are legislative questions, intrusted to the city authorities, with which the courts have no right to interfere.

■ The repair and restoration of Perkins Lane West would likewise involve countless decisions regarding the exercise of judgment and discretion. Selection of the type or method of repair, valuation of feasibility studies, acceptance of cost estimates in light of funds available, and the competing demands for street repair all involve the exercise of discretion. Because the City may incur liability for damages in the event the repair is performed negligently, the City must have complete latitude and freedom on deciding how to accomplish the repair. It must be free to do it at the proper time. To shore up a sliding hillside in the wintertime poses hazards and risks and costs that might not be encountered in the summer. Further, the respondent homeowners have not shown that the City has funds appropriated and available to complete the repair and restoration project as mandated. It is well settled that decisions regarding the appropriation and expenditure of public

funds are legislative questions. We are persuaded that the repair of Perkins Lane West involves the exercise of discretion.

Related to the question of discretion but usually treated as a separate requirement for mandamus is the necessity that there be a duty imposed by law. Respondent homeowners fail to direct us to a specific statute imposing a duty on the City to repair its streets, but contend that RCW 35.22.280(7)[3] imposes an implied duty on the City of Seattle to maintain and repair its streets. Our Supreme Court in *State ex rel. Clark v. Seattle, supra,* rejected a similar contention. The court in *Clark* noted that a statute gave specific power to cities of the first class to construct and keep bridges in repair and a city charter provision authorized the construction and repair of bridges. The *Clark* court said with respect to these statutory provisions,

> These legislative and charter expressions deal with power. The exercise of them is legislative, or discretional, and not ministerial.

*State ex rel. Clark v. Seattle,* 137 Wash. at 458. In similar fashion, RCW 35.22.280(7) deals with a grant of power to a city of the first class to establish and improve streets. Whether to exercise such power is a legislative function within the authority of the city government but falls far short of creating a duty.

Despite the absence of a specific statutory requirement imposing a duty, the respondents point to a principle well settled in Washington law that once a city accepts a dedication and opens a street, it has a duty to keep such street in a condition that is reasonably safe for usual and ordinary travel. From this principle, respondents argue that because the earth–slide damage has not been repaired, the southerly portion of Perkins Lane West is not in a reason-

---

[3]RCW 35.22.280(7) enumerates the specific power of a first class city "[t]o lay out, establish, open, alter, widen, extend, grade, pave, plank, establish grades, or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks, and other public grounds, and to regulate and control the use thereof, and to vacate the same, . . ."

ably safe condition. Consequently, the argument continues, the trial court correctly ordered the City to perform its duty to maintain its streets in a reasonably safe condition by issuing mandamus. In support of this argument respondents cite *Boeing Co. v. State,* 89 Wn.2d 443, 572 P.2d 8 (1978); *Provins v. Bevis,* 70 Wn.2d 131, 422 P.2d 505 (1967); *Prybysz v. Spokane,* 24 Wn. App. 452, 601 P.2d 1297 (1979); and *Sutton v. Snohomish,* 11 Wash. 24, 39 P. 273 (1895). The fallacy in respondents' contention stems from the fact that each of these cases involves actions for damages based upon a theory of negligence. The duty to maintain streets in a reasonably safe condition or suffer possible liability for damages proximately caused by a breach of such a duty does not create a duty to repair enforceable by mandamus. The principle involved in the cases respondents cite creating liability for damages resulting from failure to keep streets in repair has no application here. This point was analyzed and discussed at length in *State ex rel. Clark v. Seattle, supra.* The court said at pages 459–60:

> Nor does the fact that the city may be held liable for injuries resulting in damage, because of failure to keep the bridge in repair, have any important bearing on the inquiry. This is very well reasoned in the case of *Leonard v. Wakeman,* 120 Iowa 140, 94 N. W. 281, as follows:
>
> "In support of their contention, counsel for appellants cite a line of cases commencing with *Wilson & Gustin v. Jefferson County,* 13 Iowa 181, wherein the doctrine is announced that a county may be held liable for injuries, resulting in damage, caused either by defective construction of bridges, involving negligence, or negligence in failing to keep the same in repair. The authority of these cases is not to be doubted, but the principle involved has no application here. In its broadest signification the rule of the cases cited is authority only for the proposition that the county may be held liable for specific damages proven, if its governing board shall be negligent in connection with the matter of building a bridge, or, having elected not to rebuild or repair a certain bridge, if it shall be negligent in not taking necessary precaution to warn and protect innocent and unwary travelers from a dangerous condition left existing in connection therewith.

The duty enjoined is that general duty which the law places upon the shoulders of every one that he use instrumentalities in his charge, or under his control, so that the same shall not become a menace to the lives and property of others. Manifestly, such rule has no relation to the doctrine announced in *State v. Morris, supra.* The essence of the holding in that case is that in the matter of building and repairing bridges, the duty devolving upon county boards is a discretionary one; that it is a duty which it owes to the public generally, and not to an individual, or any class of individuals, and that the exercise thereof cannot, therefore, be controlled by a resort to the courts."

Respondents also rely on a line of cases establishing a homeowner's right to access to his property from a dedicated street. Claims relating to loss of access by reason of the City's failure to repair a street closed by a landslide may give rise to a claim for damages, but do not support mandamus.[4] The question of damages in the instant case was specifically reserved for trial.

Respondents place considerable reliance on a California case, *Clay v. Los Angeles,* 21 Cal. App. 3d 577, 98 Cal. Rptr. 582 (1971), to support the argument that the dedication of Perkins Lane West carried with it an acceptance by the City of the duty to repair and maintain the street until it was vacated.[5] A close examination of the facts and the

---

[4]Further it would appear that mandamus ordering the repair of a street for 4-wheeled vehicular traffic conflicts with the discretionary authority to close a street contained in RCW 47.48.010 which states in part as follows:

Whenever the condition of any . . . city street, either newly or previously constructed . . . or any part thereof is such that for any reason its . . . continued use by vehicles or by any class of vehicles . . . will be dangerous to traffic thereon . . . the governing body . . . is authorized to close such . . . street . . . to travel by all vehicles or by any class of vehicles . . . for such a definite period as they shall determine: . . .

[5]The City in its reply brief disputes the assertion that Perkins Lane West was opened by the City. The City's reply brief states at page 10,

Notwithstanding, the fact is that Perkins Lane was not opened by the City. It was built by interested private parties. The road was subsequently graded and curbed by L.I.D., and the City has responded when previous slide damage was capable of being corrected through routine maintenance measures.

holding in *Clay* reveal that it is inapposite.

In *Clay* the homeowners sued the City of Los Angeles for damages because the City would neither repair the washed-out street which provided the only access to their homes nor vacate the street and pay damages. There was no effort on the part of the homeowners to force the City to act by mandamus but only to seek damages. Though interesting, the *Clay* case does not assist the arguments advanced by the homeowners in the instant case. The court in *Clay* found that the City had to pay damages if it didn't restore the street but left the decision to repair and restore the street and the access or vacate and pay damages to the discretion of the City.

In conclusion, we find no duty clearly imposed on the City of Seattle to repair or restore the damaged portion of Perkins Lane West enforceable by mandamus. Further, the decision whether to repair the street in question, how to repair it or not to repair it at all is a discretionary decision not subject to judicial invasion of legislative power by the issuance of mandamus. The partial summary judgment appealed from is reversed, and the writ of mandamus dissolved.

CALLOW and RINGOLD, JJ., concur.

Reconsideration denied September 3, 1982.

Review denied by Supreme Court December 3, 1982.