IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MICHELLE J. KINNUCAN, | ) | DIVISION ONE |
| | ) | |
| Appellant, | ) | No. 74360-1-I |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CITY OF SEATTLE, | ) | |
| | ) | |
| Respondent. | ) | FILED: December 19, 2016 |
| | ) | |

DWYER, J. — RCW 59.18.440 authorizes any city, town, county, or municipal corporation to adopt local ordinances that require property owners to pay relocation assistance funds to low-income tenants upon the demolition, substantial rehabilitation, or change of use of the dwelling in which such tenants reside, so long as the ordinances provide for administrative hearings to resolve disputes between the landlord and tenant relating to relocation assistance or unlawful detainer actions during relocation. After the City of Seattle determined that it would not provide Michelle Kinnucan with an administrative hearing to resolve her unlawful detainer action, she filed suit in the King County Superior Court seeking a writ of mandamus to require the City of Seattle to adopt policies and procedures consistent with RCW 59.18.440. The superior court denied Kinnucan's request for the writ and granted the City's motion to dismiss. Finding no error, we affirm.

I

In response to sharp increases in rental prices during the 1980s, the Washington legislature enacted legislation that it hoped would "encourage economic opportunity for all Washington citizens and [ ] promote the availability of affordable housing." Garneau v. City of Seattle, 147 F.3d 802, 804 (9th Cir. 1998). RCW 59.18.440(1) authorizes cities to adopt ordinances that require property owners to provide low-income tenants with relocation assistance funds, so long as the property owner is seeking to demolish, substantially rehabilitate, or change the use of a dwelling occupied by such tenants. Pursuant to RCW 59.18.440(5), cities that adopt such requirements must also adopt policies, procedures, or regulations that "include provisions for administrative hearings to resolve disputes between tenants and property owners relating to relocation assistance or unlawful detainer actions during relocation."

The City subsequently adopted the Tenant Relocation Assistance Ordinance (TRAO). The TRAO requires that property owners obtain a tenant relocation license "[p]rior to the demolition, change of use or substantial rehabilitation of any dwelling unit, and prior to the removal of use restrictions from any dwelling unit which results in the displacement of a tenant." Seattle Municipal Code (SMC) 22.210.050. Before the City issues such a license, the property owner must provide all tenants with an informational packet about the TRAO, pay the property owner's share of the relocation assistance funds to the City (half of the total amount due to each tenant), and provide a 90-day advance notice of the demolition of the property to all tenants. SMC 22.210.060. The City

then issues a tenant relocation license to the property owner and provides eligible low-income tenants with relocation assistance funds. SMC 22.210.130.

The TRAO prohibits property owners from increasing rent or otherwise harassing or intimidating tenants in order to avoid paying their share of relocation assistance. SMC 22.210.136, .140. Additionally, the TRAO provides administrative hearings "to appeal a determination concerning a tenant's eligibility for a relocation assistance payment, to resolve a dispute concerning the authority to institute unlawful detainer actions before issuance of the tenant relocation license . . . or to review a decision of the Director [regarding complaints of rent increases]." SMC 22.210.150.

Kinnucan resided at the Lockhaven apartment building pursuant to a fixed-term tenancy from 2009 to 2013. On June 1, 2013, Kinnucan's lease was converted to a month-to-month tenancy. Goodman Real Estate (Goodman) thereafter purchased the Lockhaven apartments and sought to terminate all of the Lockhaven leases in order to substantially rehabilitate the apartments. Goodman applied for a tenant relocation license pursuant to the TRAO, the City determined that Kinnucan was eligible for relocation assistance, and the City issued a tenant relocation license to Goodman.

In early April, immediately after receiving the tenant relocation license, Goodman issued a notice to Kinnucan requiring her to vacate her apartment by the end of the month. Kinnucan thereafter contacted the City's Office of the Hearing Examiner by e-mail to ask if the hearing examiner was the appropriate agency to "hear[ ] disputes concerning the owner's authority to institute unlawful

detainer actions" pursuant to the TRAO. The City responded that the hearing examiner "has the authority to hear your complaint." A hearing was never commenced, however, because the hearing examiner later ruled that she did not have the authority to adjudicate the dispute. Kinnucan sought reconsideration, but the hearing examiner reaffirmed her decision.

Meanwhile, the City notified Goodman that the revised lease termination notification had been issued in violation of Seattle's just cause ordinance, which prohibits eviction without a court order. SMC 22.206.160. Goodman subsequently rescinded the improper notice and issued a new notice of eviction. Proceeding pro se, Kinnucan filed a lawsuit against Goodman seeking a temporary restraining order, eventually dropping the suit after the parties agreed to mediate. Kinnucan ultimately did not vacate Lockhaven until October of 2014.

In December 2014, Kinnucan filed suit against the City seeking a writ of mandamus requiring the City to: (1) grant "administrative hearings to all tenants who, after September 30, 2014, file or have filed appeals to resolve disputes relating to relocation assistance or unlawful detainer actions during relocation within the meaning of RCW 59.18.440(5)"; and (2) adopt "policies, procedures, or regulations that include provisions for administrative hearings to resolve disputes between tenants and property owners relating to relocation assistance or unlawful detainer actions during relocation." The City answered, asserting that its existing ordinances and regulations already complied with the law. The superior court denied Kinnucan's application and granted the City's motion to dismiss pursuant to CR 12(b)(6). Kinnucan timely appealed.

II

We review de novo a trial court's ruling on a motion to dismiss pursuant to CR 12(b)(6). Alexander v. Sanford, 181 Wn. App. 135, 141, 325 P.3d 341 (2014). Dismissal pursuant to CR 12(b)(6) is appropriate only when "it appears beyond doubt that the plaintiff cannot prove any set of facts which would justify recovery." Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 330, 962 P.2d 104 (1998). In making this determination, the plaintiff's allegations are presumed to be true and we may consider hypothetical facts, consistent with the averments in the complaint, that are not part of the formal record. Sanford, 181 Wn. App. at 142.

The issuance of a writ of mandamus is an extraordinary remedy. Burg v. City of Seattle, 32 Wn. App. 286, 289, 647 P.2d 517 (1982). Pursuant to RCW 7.16.160, a writ of mandamus may be issued

> by any court, except a district or municipal court, to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by such inferior tribunal, corporation, board or person.

A party seeking mandamus must prove three predicates before a writ will issue: "(1) the party subject to the writ is under a clear duty to act, RCW 7.16.160; (2) the applicant has no 'plain, speedy and adequate remedy in the ordinary course of law,' RCW 7.16.170; and (3) the applicant is 'beneficially interested.' RCW 7.16.170." Eugster v. City of Spokane, 118 Wn. App. 383, 402, 76 P.3d 741 (2003).

A

Kinnucan first contends that RCW 59.18.440(5) imposes a clear duty on the City to offer administrative hearings to low-income tenants after a tenant relocation license has been issued to the property owner. We disagree.

The determination of whether a statute specifies a duty is a matter of statutory interpretation that we review de novo. State v. LG Elecs., Inc., 185 Wn. App. 123, 132, 340 P.3d 915 (2014), affirmed 186 Wn.2d 1, 375 P.3d 636 (2016). "Mandamus is appropriate to compel a government official or entity 'to comply with law when the claim is clear and there is a duty to act.'" Eugster, 118 Wn. App. at 404 (quoting In re Pers. Restraint of Dyer, 143 Wn.2d 384, 398, 20 P.3d 907 (2001)). Mandamus "will issue only in relation to the performance of a ministerial duty and not for a duty or power which requires the exercise of discretion." Burg, 32 Wn. App. at 291. A discretionary function "is one involving a basic governmental policy, program, or objective requiring the exercise of a basic policy evaluation, judgment, and expertise on the part of the officer or agency." Moloney v. Tribune Publ'g Co., 26 Wn. App. 357, 360, 613 P.2d 1179 (1980).

Here, whether the City has a clear duty to provide administrative hearings after the issuance of a tenant relocation license turns on the meaning of RCW 59.18.440(5). It should first be noted that RCW 59.18.440 is a remedial statute, intended to address the disparate impact of rising rent on low-income individuals by providing those individuals with relocation funds. Garneau, 147 F.3d at 804. "[R]emedial legislation is construed liberally in order to accomplish the purpose

for which it is enacted." State v. Douty, 92 Wn.2d 930, 936, 603 P.2d 373 (1979). The broader rules of statutory construction require that courts interpret statutes in the manner that best advances the perceived legislative purpose. Morris v. Blaker, 118 Wn.2d 133, 143, 821 P.2d 482 (1992).

Pursuant to RCW 59.18.440(5), a city that requires property owners to pay into a relocation assistance program for low-income tenants must adopt policies, procedures, or regulations that include "administrative hearings to resolve disputes between tenants and property owners relating to relocation assistance or unlawful detainer actions during relocation." The key phrase—"during relocation"—is neither defined nor referenced elsewhere in the code.

Kinnucan contends that the City's TRAO is flawed in two ways. First, Kinnucan asserts that the plain meaning of "during relocation" includes the period of time in which a low-income tenant is moving from one residence to another. Thus, she contends, the City is impermissibly limiting the period of time in which it offers administrative hearings to exclude the time frame after a tenant relocation license has been issued but before the tenant has moved out of the apartment. Second, Kinnucan asserts that the TRAO impermissibly limits the scope of these administrative hearings with regard to unlawful detainer actions by providing for such hearings only to determine the authority to institute unlawful detainer actions. Kinnucan is wrong on both counts.

1

Kinnucan contends that the plain meaning of the phrase "during relocation" includes the period of time in which a tenant is moving from one

residence to another.[1]  Although "during relocation" is not defined in RCW 59.18.440, the scope of the phrase is apparent by reading the statute as a whole.

First, RCW 59.18.440(1) expressly preempts any local regulations or ordinances not authorized by this legislation that require property owners to pay relocation assistance funds to low-income tenants.  Second, RCW 59.18.440(3) requires that a participating city determine the amount of relocation assistance to be provided to low-income tenants from property owners and require that those property owners pay that amount.  Third, RCW 59.18.440(4)(c) requires that a participating city pay the portion of relocation assistance not covered by property owners.  Finally, RCW 59.18.440(5) provides for judicial review of administrative hearing decisions *relating to relocation assistance*.

Thus, RCW 59.18.440 requires that a participating city establish a system whereby low-income tenants receive relocation assistance that is mutually paid for by the city and by the property owner.  Should a dispute arise between the property owner and the tenant *relating to relocation assistance*, the city must allow for an administrative hearing.  Tellingly, RCW 59.18.440 is silent as to any dispute or event that occurs after such relocation assistance has been provided.  Accordingly, a reading of the statute as a whole leads to but one conclusion— "during relocation" is in reference to the relocation assistance, not physical relocation of the tenants themselves.

_____

[1] Although Kinnucan contends that the phrase "during relocation" leaves nothing to the discretion of the City, she does not attempt to define when "during relocation" has ended—only that it must include some period of time after the City has issued the tenant relocation license.

RCW 59.18.440(5) imposes on the City a duty to adopt "policies, procedures, or regulations" that are consistent with the statute's requirements. The precise details of those policies, procedures, or regulations are left to the discretion of the City. Here, the City adopted the TRAO, which provides for administrative hearings up until the point in time when a tenant relocation license has been issued and, thus, the low-income tenant's eligibility has been determined and the property owner has paid its portion of the relocation assistance. These administrative hearings are available to low-income tenants "during relocation," as understood in the context of RCW 59.18.440 as a whole. Although the City could have exercised its discretion to require a different administrative hearing scheme, a writ of mandamus will not issue to compel a government entity to exercise its discretion in a particular manner.[2] Eugster, 118 Wn. App. at 405.

---

[2] In its briefing, amicus Northwest Justice Project suggests that subjects of administrative hearings commenced after the issuance of the relocation license could be (1) the merits of an unlawful detainer action, (2) the merits of a just cause defense to an unlawful detainer action, or (3) a request to revoke the relocation license. This assertion fails.

As the City points out, superior courts have exclusive jurisdiction over the merits of an unlawful detainer action. Thus, the statute at issue cannot be construed as amicus suggests. Also as pointed out by the City, just cause is a defense arising out of Seattle ordinance—not state statute. Thus, it is not credible to assert that the legislature sought to mandate the existence of hearings to resolve just cause issues (solely a City of Seattle matter) postlicense issuance.

Finally, as the City also points out, the sought-after hearings could not be for the purpose of revoking the issued license. In almost all cases, the license will be issued in conjunction with the redevelopment permit. SMC 22.210.050. The issuance of a redevelopment permit is a final land use decision, Ward v. Bd. of County Comm'rs, 86 Wn. App. 266, 270, 936 P.2d 42 (1997) ("a 'land use decision' is 'a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals'" (quoting RCW 36.70C.020(2)), subject to the Land Use Petition Act's (LUPA) 21-day appeal period. RCW 36.70C.040(2), (3). After that, the issue is final. See Habitat Watch v. Skagit County, 155 Wn.2d 397, 407, 120 P.3d 56 (2005) ("[A] land use decision becomes unreviewable by the courts if not appealed to superior court within LUPA's specified timeline."). Any action by the City to revoke the license would necessarily affect the permit and be controlled according to the law applicable to LUPA.

Similarly, if a tenant grievance arises after the issuance of a license, it is subject to the City's code enforcement process. If voluntary compliance is not obtained, the City may bring an

There is nothing in RCW 59.18.440 that imposes a clear duty on the City to offer administrative hearings continuously throughout the period of time in which a low-income tenant is moving from one residence to another. The City lawfully exercised its discretion to limit administrative appeals to the period of time before a tenant relocation license is issued.

2

Kinnucan also contends that the City has wrongfully limited the administrative hearings that it does provide regarding unlawful detainer actions. This is so, she asserts, because RCW 59.18.440(5) requires that the City permit unlawful detainer actions to be adjudicated in administrative hearings.

RCW 59.18.440(5) requires that the City adopt policies, procedures, or regulations that include administrative hearings to resolve disputes "relating to . . . unlawful detainer actions during relocation." The City's TRAO provides for such hearings "to resolve a dispute concerning the authority to institute unlawful detainer actions before issuance of the tenant relocation license." SMC 22.210.150.

Contrary to Kinnucan's position, the TRAO's limitations regarding unlawful detainer actions are entirely consistent with RCW 59.18.440. The superior courts have subject matter jurisdiction over unlawful detainer proceedings. WASH. CONST. Art. IV, § 6; RCW 59.12.050. Such jurisdiction is constitutional in origin and could not have been divested by the Legislature through the enactment of RCW 59.18.440. Blanchard v. Golden Age Brewing Co., 188 Wash. 396, 415, 63

action in municipal court. There is no indication in the statute at issue that the legislature sought to circumvent or preempt this municipal method of code enforcement.

-10-

P.2d 397 (1936). Likewise, the City has no authority to adopt ordinances that divest the superior court of subject matter jurisdiction.

Rather, what the TRAO provides are administrative hearings for instances in which a landlord is attempting to unlawfully evict a tenant—or otherwise harass, intimidate, or raise rent to cause a tenant to vacate their apartment—so as to avoid paying tenant relocation assistance. SMC 22.210.136, .140. These unlawful actions may occur at any time prior to—or during—the time frame in which a property owner is applying for a tenant relocation license, master use permit, or building permit—so long as such actions are motivated by a desire to avoid application of the tenant relocation assistance ordinance. SMC 22.210.136, .140. The hearing examiner's decision regarding any of these unlawful actions would then be appealable to the superior court. RCW 59.18.440(5); SMC 22.210.150(J). Should an unlawful detainer action arise after the City has issued the tenant relocation license, existing laws and ordinances allow landlords and tenants to file suit in the superior court. Thus, the TRAO's language providing for administrative hearings "concerning the authority to institute unlawful detainer actions before issuance of the tenant relocation license" is consistent with the City's mandate to provide for hearings "relating to" unlawful detainer actions. RCW 59.18.440(5); SMC 22.210.150.

RCW 59.18.440(5) requires that the City adopt policies, procedures, or regulations that provide for administrative hearings relating to relocation assistance and unlawful detainer actions during relocation. The City has done so. Kinnucan has not demonstrated that the City is under a clear duty to offer

administrative hearings after the point provided for in the ordinance—the issuance of the relocation license.

B

Issuance of a writ of mandamus also requires that the applicant have no other plain, speedy, and adequate remedy in the ordinary course of law. Eugster, 118 Wn. App. at 402. We review a trial court's determination as to whether another suitable remedy exists for abuse of discretion. River Park Square, LLC v. Miggins, 143 Wn.2d 68, 76, 17 P.3d 1178 (2001). "A remedy is not inadequate merely because it is attended with delay, expense, annoyance, or even some hardship. There must be something in the nature of the action that makes it apparent that the rights of the litigants will not be protected or full redress will not be afforded without the writ." City of Kirkland v. Ellis, 82 Wn. App. 819, 827, 920 P.2d 206 (1996).

Kinnucan asserts that the other remedies available to low-income tenants facing unlawful eviction—specifically, filing suit—are not as speedy as an administrative hearing and cannot fully compensate those tenants. This argument is unavailing.

The correct standard does not require that there be no other remedy as convenient and inexpensive as the remedy sought by the writ but, rather, that there be "no plain, speedy and adequate remedy in the ordinary course of law." City of Kirkland, 82 Wn. App. at 827. By contending that the remedies that currently exist are not as speedy or as convenient as an administrative hearing, Kinnucan acknowledges that there are other remedies available to low-income

-12-

tenants and attempts to change the standard by which those remedies are analyzed.

Kinnucan herself cannot benefit from the writ she seeks and it is not clear how any other low-income tenant could benefit from such an order. When Kinnucan was unlawfully evicted from her apartment she brought suit pursuant to the Residential Landlord-Tenant Act, chapter 59.18 RCW, which prevents landlords from taking retaliatory actions against tenants acting lawfully and in good faith. RCW 59.18.240. Kinnucan also relied on Seattle's just cause ordinance, SMC 22.206.160, which prohibits evictions without a court order. Should a landlord attempt to cause a low-income tenant to vacate their apartment before applying for a tenant relocation license—to avoid paying their portion of the relocation assistance—the TRAO provides for administrative hearings. SMC 22.210.150; SMC 22.210.140(B). These were the other plain, speedy, and adequate remedies available to Kinnucan and these are the same remedies that will be available to other low-income tenants facing unlawful eviction.

Kinnucan correctly acknowledges that low-income tenants may find it difficult and relatively expensive to file suit against their landlords, and that an administrative hearing might be preferable in those instances. However, "[t]here must be something in the nature of the action or proceeding that makes it apparent to this court that it will not be able to protect the rights of the litigants or afford them adequate redress, otherwise than through the exercise of this extraordinary jurisdiction." State ex rel. Miller v. Superior Court of Spokane

County, 40 Wash. 555, 559, 82 P. 877 (1905). The issue of a writ is not proper when other sufficient remedies exist. This is such an instance.

In denying the writ and granting the City's motion to dismiss, the trial court stated, "I do believe that there is an alternative remedy, and that is to file a suit, a lawsuit. I mean, I realize it may be inconvenient. It might be expensive, especially for low-income folks, but there is still that option for people." The trial court voiced a tenable reason for concluding that low-income tenants have another plain, speedy, and adequate remedy at law. Accordingly, the trial court did not abuse its discretion.

C

Issuance of a writ of mandamus is an extraordinary remedy, and Kinnucan has failed to set forth any set of facts that justify such relief. RCW 59.18.440(5) mandates that the City provide administrative hearings to resolve disputes related to relocation assistance and unlawful detainer actions during relocation— the City has done so. Low-income tenants may pursue an administrative hearing to resolve certain disputes pursuant to the TRAO prior to the issuance of the tenant relocation license. SMC 22.210.150. Nothing in RCW 59.18.440 imposes a duty on the City to provide administrative hearings for low-income tenants throughout the period of time in which a tenant is moving from one residence to another. Should a low-income tenant face unlawful eviction, as Kinnucan did, there are other plain, speedy, and adequate remedies available. Issuance of a writ of mandamus was not required.

Finally, it is prudent to address the proposed remedy itself. "Writs are not directed at a general course of conduct" but, rather, "the remedy of mandamus contemplates the necessity of indicating the precise thing to be done." Walker v. Munro, 124 Wn.2d 402, 407, 879 P.2d 920 (1994) (concluding that a writ ordering a state officer to comply with the constitution is a general mandate (citing Clark County Sheriff v. Dep't of Social & Health Servs., 95 Wn.2d 445, 450, 626 P.2d 6 (1981))).

Kinnucan seeks an order directing the City to adopt policies, procedures, or regulations "that satisfy the legislative mandate in RCW 59.18.440(5)" and provide administrative hearings "consistent with the same legislative mandate." Br. of Appellant at 6. It is not clear how such an order would lead to an extended time frame for administrative hearings. The City's position is that the TRAO already complies with the requirements of RCW 59.18.440 without offering such administrative hearings. Kinnucan's proposed order does no more than order the City to comply with the law—a general course of conduct that the City is already engaged in.

Even if the City did offer administrative hearings after the issuance of a tenant relocation license, it is not clear what purpose such hearings would serve. The hearing examiner would have no authority to adjudicate the merits of unlawful detainer actions or revoke licenses relating to the rehabilitation of the property. Indeed, the very claim that Kinnucan sought administrative review of— a violation of Seattle's just cause ordinance—was properly disposed of by the superior court.

The trial court properly granted the City's motion to dismiss.

Affirmed.

_____
Dwyer, J.

We concur:

_____
Mann, J.

_____
Cox, J.