[No. 45295.   En Banc.   December 21, 1978.]

·YOUNG AMERICANS FOR FREEDOM, ET AL, *Appellants,* v. SLADE GORTON, *as Attorney General,* ET AL, *Respondents.*

*Richard B. Sanders,* for appellants.

*Slade Gorton, Attorney General,* and *Wayne L. Williams, Assistant,* for respondents.

HAMILTON, J.—This is an appeal from a summary judgment dismissing plaintiffs' (appellants') action for damages against the defendants (respondents), Slade Gorton (State Attorney General) and James B. Wilson (Senior Assistant Attorney General), individually. The action arises out of the official filing by defendant, on behalf of the State of Washington and the University of Washington, of an amicus curiae brief in the United States Supreme Court in

the case of *Regents of the Univ. of Cal. v. Bakke,* 438 U.S. 265, 57 L. Ed. 2d 750, 98 S. Ct. 2733 (1978).

We affirm the judgment of dismissal.

Plaintiffs, in substance, alleged in their complaint that defendants, acting without authority and at public expense, caused the amicus curiae brief to be filed in which it was urged that the decision of the California Supreme Court in the *Bakke* case be reversed. Plaintiffs claimed that the brief purported to assert a viewpoint on behalf of all citizens of the state and that the views expressed therein were abhorrent to them as taxpaying state citizens. Plaintiffs thus sought damages for abridgment of their constitutional rights by the use of state funds and prestige to advocate views inconsistent with theirs, when the State was neither a party to nor had an interest in the litigation.

On appeal, plaintiffs argue two issues. First, they contend the Attorney General is without constitutional or statutory authority to file the subject brief in a case in which neither the State of Washington nor any of its officers, departments, or employees have a cognizable interest. Second, they assert that if there be such authority, then such authority abridges their rights of free expression under the first amendment to the United States Constitution[1] by forcing them, as state citizens, to morally and financially underwrite the advocacy of doctrines with which they disagree.

In support of their first contention, plaintiffs assert that the powers of the Attorney General are specifically and exclusively defined by Const. art. 3, § 21, RCW 43.10.030 and .040, which respectively provide, in pertinent part:

> The attorney general shall be the legal adviser of the state officers, and shall perform such other duties as may be prescribed by law.

Const. art. 3, § 21.

---

[1] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. amend. 1.

The attorney general shall:

(1) Appear for and represent the state before the supreme court or the court of appeals in all cases in which the state is interested;

(2) Institute and prosecute all actions and proceedings for, or for the use of the state, which may be necessary in the execution of the duties of any state officer;

RCW 43.10.030.

The attorney general shall also represent the state and all officials, departments, boards, commissions and agencies of the state in the courts . . . in all legal or quasi legal matters, hearings, or proceedings, . . .

RCW 43.10.040.

In addition, RCW 28B.10.050 provides generally that the boards of regents or trustees of the state universities and colleges shall determine the entrance requirements for their respective institutions, and RCW 28B.10.510 establishes the Attorney General as the legal adviser to such boards.

█ In our opinion this compendium of constitutional and statutory provisions relating to the Attorney General and his status as attorney for the state and its departments and agencies is broad and inclusive enough to confer upon that office authority to appear as amicus curiae before the United States Supreme Court in cases which may directly or. indirectly impact upon state functions or administrative procedures and operations. Certainly, in the instant case, as we shall point out, the overall concern of the State in its higher educational institutions combined with the particular concern of the graduate departments of the University of Washington in minority admissions programs was sufficiently vital to justify official action by the Attorney General in his status as "legal adviser" to state officials and agencies.[2]

---

[2]We conceive the phrase "legal adviser" in the context of the Attorney General's status in state government contemplates something more than a mere passive role in the formulation and implementation of state governmental policies and practices.

In carrying out his function as a legal adviser, defendants utilized a device, *i.e.,* the filing of an amicus curiae brief, which has been known in English common law since the middle of the 14th century. *See* E. Beckwith & R. Sobernheim, *Amicus Curiae—Minister of Justice,* 17 Fordham L. Rev. 38, 40 (1948). While the literal meaning and true status of an amicus curiae may import the interposition of a disinterested bystander to aid and advise the court on the law to the end that justice may be attained, the ordinary utilization of the device both in practice and in conformity with court rule does not preclude interested persons, whether attorneys or laymen, from seeking to undertake the role. *See* United States Supreme Court Rule 42(3) and (4), 28 U.S.C.A.,[3] and RAP 10.6(b).[4]

Since the constitutional and statutory provisions hereinabove alluded to vest the Attorney General with a reasonable degree of discretion as an official legal adviser and RCW 43.10.040 specifically authorizes that elected official "to represent the State . . . in the courts . . . in all legal

---

[3] "3. When consent to the filing of a brief of an *amicus curiae* is refused by a party to the case, a motion for leave to file may timely be presented to the court. It shall concisely state the nature of the applicant's interest, set forth facts or questions of law that have not been, or reasons for believing that they will not adequately be, presented by the parties, and their relevancy to the disposition of the case; and it shall in no event exceed five printed pages in length. A party served with such motion may seasonably file an objection concisely stating the reasons for withholding consent.

"4. Consent to the filing of a brief of an *amicus curiae* need not be had when the brief is presented for the United States sponsored by the Solicitor General; for any agency of the United States authorized by law to appear in its own behalf, sponsored by its appropriate legal representative; for a State, Territory, or Commonwealth sponsored by its attorney general; or for a political subdivision of a State, Territory, or Commonwealth sponsored by the authorized law officer thereof." U.S. Sup. Ct. Rule 42(3) and (4), 28 U.S.C.A.

[4] "(b) Motion. A motion to file an amicus curiae brief must include a statement of (1) applicant's interest and the person or group applicant represents, (2) applicant's familiarity with the issues involved in the review and with the scope of the argument presented or to be presented by the parties, (3) specific issues to which the amicus curiae brief will be directed, and (4) applicant's reason for believing that additional argument is necessary on these specific issues. The brief of amicus curiae may be filed with the motion." RAP 10.6(b).

and quasi legal matters," we find no reason to presume that the constitutional framers or the legislature intended to deny the Attorney General the power to represent the State or its agencies in the time–honored capacity of amicus curiae.

Our view in this respect is consistent with *State v. Taylor,* 58 Wn.2d 252, 362 P.2d 247, 86 A.L.R.2d 1365 (1961), upon which plaintiffs seek to rely. In *Taylor* we held that RCW 43.10.030(1), as it then read,[5] authorized the Attorney General to enforce charitable trusts by way of an accounting action, although the statutes did not embody a clear command to the Attorney General to do so. We reasoned that "inasmuch as the proper management of charitable trusts is a matter of public concern, this is a case in which the state is interested." *Taylor, supra* at 256. We therefore concluded that the Attorney General was permitted, by an action for accounting, to enforce a charitable trust without express statutory authorization. One limitation was placed upon the Attorney General's power: If he were to bring an action, it must be one cognizable at common law or a statutory cause of action.

The general rule of *Taylor* is applicable here. In this case, the Attorney General has taken an action which is not specifically authorized by the pertinent constitutional and statutory provisions. However, as we have noted, the applicable provisions are couched in language broad enough, in our view, to include the filing of an amicus curiae brief under appropriate circumstances. In *Taylor* we rejected the requirement of express statutory authorization, and we decline to declare such a requirement now. Furthermore, the Attorney General's action in this case comports with the limitation set out in *Taylor,* since the filing of an amicus curiae brief is cognizable both at common law and by authorized court rule.

---

[5] "The attorney general shall:

"(1) Appear for and represent the state before the courts in all cases in which the state is interested; . . ." RCW 43.10.030(1).

Our decision also accords with our rulings in *Boe v. Gorton,* 88 Wn.2d 773, 567 P.2d 197 (1977), and *Berge v. Gorton,* 88 Wn.2d 756, 567 P.2d 187 (1977), in which we held that the Attorney General may exercise broad discretion in the exercise of his duties. We therefore decline to adopt the restrictive approach urged by plaintiffs.

Plaintiffs next contend that even if the Attorney General were authorized to file an amicus curiae brief, he had no authority to do so in this particular case because the State has no legally cognizable interest in the litigation.[6] Plaintiffs contend that the only interest expressed in the amicus curiae brief was the personal interest of the defendants. Assuming, arguendo, the State must have a "cognizable interest" in the litigation, as espoused by plaintiffs, a review of the issues before the United States Supreme Court in *Regents of the Univ. of Cal. v. Bakke,* 438 U.S. 265, 57 L. Ed. 2d 750, 98 S. Ct. 2733 (1978), and the interest of this state expressed in the amicus curiae brief, satisfies us that the State had an adequate interest in the outcome of the *Bakke* litigation which was sufficient to justify the Attorney General's filing of the amicus curiae brief.

The *Bakke* case involved an action for declaratory and injunctive relief against the Regents of the University of California by a white male who had been denied admission to the medical school at the University of California at Davis. The plaintiff in *Bakke* challenged the medical school's special admissions program under which only disadvantaged members of minority races were considered for 16 of the 100 places in each year's class. Members of any race could seek to qualify under the school's general admissions program for the other 84 places in the class. The plaintiff had been denied admission to the school under the general admissions program, even though applicants with

[6]Plaintiffs equate a "cognizable interest" to that interest necessary to permit a party to intervene in a pending suit, or to the interest standing required to initiate or defend an action as a party. We are unable to accept or adopt this analogy in the context of amicus curiae appearances.

substantially lower entrance examination scores had been admitted under the special admissions program. The Supreme Court of California, in essence, held that the program violated the constitutional rights of nonminority applicants because it afforded preference on the basis of race to persons who, by the University's own standards, were not as qualified for the study of medicine as nonminority applicants. *Bakke v. Regents of the Univ. of Cal.*, 18 Cal. 3d 34, 553 P.2d 1152, 132 Cal. Rptr. 680 (1976).

The United States Supreme Court granted review of the case. *Regents of the Univ. of Cal. v. Bakke*, 429 U.S. 1090, 51 L. Ed. 2d 535, 97 S. Ct. 1098 (1977). In the statement of interest included in the amicus curiae brief, defendants explained the interest of the State of Washington and the University of Washington in the *Bakke* litigation. The defendants correctly asserted that the state operated a system of higher education which included two universities, four colleges, and twenty–eight community colleges. Each school and college endeavored to increase the numbers of underrepresented minorities among its students by various admissions programs. While the several programs did not correspond in all respects with the challenged program and formula of the University of California, each program, nevertheless, gave favorable consideration in one form or another to the ethnic backgrounds of applicants when determining who could be admitted into the number of places available.

We note that one such admissions program at the University of Washington was subject to legal challenge by a caucasian applicant whose application to the law school was rejected. *DeFunis v. Odegaard*, 82 Wn.2d 11, 507 P.2d 1169 (1973), *vacated as moot*, 416 U.S. 312, 40 L. Ed. 2d 164, 94 S. Ct. 1704 (1974), *aff'd on rehearing*, 84 Wn.2d 617, 529 P.2d 438 (1974). The trial court in that case held that the plaintiff had been discriminated against on the basis of race. However, this court reversed, stating:

[T]he state has an overriding interest in promoting integration in public education. In light of the serious underrepresentation of minority groups in the law schools, and considering that minority groups participate on an equal basis in the tax support of the law school, *we find the state interest in eliminating racial imbalance within public legal education to be compelling.*

(Italics ours.) *DeFunis v. Odegaard,* 82 Wn.2d 11, 33, 507 P.2d 1169 (1973).

The United States Supreme Court granted certiorari, *DeFunis v. Odegaard,* 414 U.S. 1038, 38 L. Ed. 2d 329, 94 S. Ct. 538 (1973), but subsequently declared the case moot and declined to decide the constitutional issue. *DeFunis v. Odegaard,* 416 U.S. 312, 40 L. Ed. 2d 164, 94 S. Ct. 1704 (1974). Upon remand, a plurality of this court reaffirmed its previous judgment. *DeFunis v. Odegaard,* 84 Wn.2d 617, 529 P.2d 438 (1974).

█ At the time that the defendants filed the challenged amicus curiae brief, it was apparent that the United States Supreme Court's decision in the *Bakke* case was likely to affect the future of the admissions programs at the institutions of higher learning operated by the State of Washington. The United States Supreme Court decision upon the admissions issue could be expected to have the effect of determining whether this state's universities and colleges could continue to consider, and to what extent, the race of applicants in order to increase the enrollment of underrepresented minorities. In light of our view of this practice as expressed in *DeFunis,* we hold that the State of Washington, as well as the University of Washington, had a public interest in the outcome of the *Bakke* litigation which was sufficient to authorize the Attorney General to file the ·challenged brief.

The second and concluding argument advanced by plaintiffs is that the Attorney General's action violated their First Amendment rights of expression and association under the United States Constitution. Plaintiffs posit the view that their designated rights were infringed in that

defendants: (1) unconstitutionally used plaintiffs' involuntarily extracted taxes to fund advocacy of ideas they do not support; and (2) unconstitutionally used plaintiffs' involuntary association as citizens of this state to advance a point of view they abhor.

█ As authority for their first proposition, plaintiffs cite, among others, *International Ass'n of Machinists v. Street,* 367 U.S. 740, 6 L. Ed. 2d 1141, 81 S. Ct. 1784 (1961). This case held that a union operating under a statutorily authorized union shop agreement may not use an employee's dues, fees, or assessments over his objection to support political causes which he opposes. The United States Supreme Court reached this conclusion on statutory grounds and specifically declined to reach the constitutional issue. Furthermore, the facts of *Machinists* are distinguishable from those of the present case in that the plaintiffs in the former case were compelled to join an organization, a labor union, and were required to pay fees, assessments, and dues into that union. *Machinists* neither factually nor constitutionally supports plaintiffs' contention. Under the circumstances of this case, we do not deem it apposite to equate organizational dues, fees, or assessments with taxes in general. Accordingly, we find no viable merit in plaintiffs' argument on this score.

█ In support of the second prong of plaintiffs' contention, they argue that they were involuntarily associated with other residents of the state due to the Attorney General's representation that he acted on behalf of the whole "association." Plaintiffs' argument is flawed in that a state is not an organization or an association; it is a political subdivision. And, it is not reasonable to infer that citizens of a state must unanimously concur in all actions taken by an elected official before any official action may be taken. To conclude otherwise would have the effect of bringing governmental action to a standstill.

Plaintiffs undertake to support their claim of involuntary association by citing the case of *Good v. Associated Students of the Univ. of Wash.,* 86 Wn.2d 94, 542 P.2d 762

(1975). In *Good,* this court held that students at a state–supported university may not be compelled by the university to be members of a student organization advocating views they find objectionable. It was held that that type of mandatory membership violated the First Amendment right *not* to associate. *Good* is distinguishable from the present case in that the present plaintiffs have not been compelled to join any group or organization. They have not been forced to associate with those whom they wish to avoid. Their voluntary citizenship in a state cannot be equated with compelled membership in a club. The defendants have taken no action which infringes on plaintiffs' right not to associate.

We stated in *Good* that "[d]issenting students should not have the right to veto every event, speech or program with which they disagree." *Good,* at 105. The rationale of this statement becomes even more compelling when considered in the context of the present case.

We find no discernible merit in this prong of plaintiffs' argument.

In concluding, we note that plaintiffs' right to espouse their opinions has not been diminished by the defendants' action; plaintiffs did, in fact, as an organized group, submit to the United States Supreme Court an amicus curiae brief which expressed their views in the *Bakke* case.

The judgment of dismissal is affirmed.

WRIGHT, C.J., STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., and RYAN, J. Pro Tem., concur.