[No. 84704-5. En Banc.]
Argued November 18, 2010. Decided September 1, 2011.

PETER GOLDMARK, *as Chief Executive Officer of the Department of Natural Resources and as Commissioner of Public Lands, Petitioner,* v. ROBERT M. MCKENNA, *as Attorney General, Respondent.*

570

*David A. Bricklin* (of *Bricklin & Newman LLP*), for petitioner.

*Robert M. McKenna, Attorney General, Maureen A. Hart, Solicitor General,* and *Alan D. Copsey, Deputy Solicitor General,* for respondent.

*Michael D. Howe, P. Stephen DiJulio, Adrian U. Winder,* and *Michael S. Schechter* on behalf of Public Utility District No. 1 of Okanogan County, amicus curiae.

¶1 C. JOHNSON, J. — In this original action brought in this court, Commissioner of Public Lands Peter Goldmark seeks a writ of mandamus to compel Attorney General Robert McKenna to pursue an appeal from a trial court decision in a condemnation action. Although McKenna provided representation at the trial court, he refused to pursue the appeal based on his evaluation of the merits of the case.

¶2 The attorney general is a constitutionally recognized office that acts as the attorney for state officers and performs other duties "prescribed by law." CONST. art. III, § 21. The legislature has delineated what those other duties are, and RCW 43.12.075 expressly requires the attorney general to represent the commissioner in any court when so requested by the commissioner. This duty is mandatory, and the attorney general has no discretion to deny the commissioner legal representation. We therefore grant the writ.

## FACTS AND PROCEDURAL HISTORY

¶3 In the underlying lawsuit, Public Utility District No. 1 of Okanogan County (the PUD) filed an action seeking to condemn an easement for installation and maintenance of a power line over both public and private lands. The petition named the State of Washington and Peter Goldmark, commissioner of public lands, among others, as respondents. As commissioner, Goldmark manages the Washington State Department of Natural Resources. Part of the property at issue is state common and normal school land held in trust and administered by Commissioner Goldmark. Agreed Statement of Facts (ASF) at 2.

¶4 The commissioner conceded public use and necessity but moved for summary judgment, arguing the PUD had no authority to condemn the lands at issue. The state's motion was denied, and summary judgment was granted for the PUD. ASF at 3, Attach. 4. Additionally, the superior court entered findings of fact, conclusions of law, and an order on public necessity, concluding the PUD has the requisite statutory condemnation authority. ASF, Attach. 6. The commissioner wished to appeal, which he discussed with his general counsel, an assistant attorney general. Then the commissioner and the attorney general exchanged correspondence and met on at least one occasion, but the attorney general refused to file the appeal for the commissioner. ASF at 5. The attorney general also refused to appoint a special assistant attorney general (SAAG) to pursue the appeal for the commissioner. ASF at 6.

¶5 The commissioner contacted his present counsel and sought advice and representation. Counsel agreed to the representation and immediately informed the attorney general of his intent to bring this original action. Goldmark Decl. at 4. In the underlying case, the attorney general filed a contingent notice of appeal, which he indicates he intends

to withdraw if he prevails here. That case has since been stayed pending our decision.[1]

## ANALYSIS

 ¶6 Our state constitution directs that the attorney general "shall be the legal adviser of the state officers, and shall perform such other duties as may be prescribed by law." CONST. art. III, § 21. Those additional duties are statutorily prescribed. In this case, we need focus on only a handful of statutes, RCW 43.10.040, 43.12.075, and 43.10-.067, to determine the attorney general has a statutory duty to provide the commissioner with legal representation. Those statutes are as follows:

> **43.10.040. Representation of boards, commissions and agencies.** The attorney general *shall* also represent the state and all officials, departments, boards, commissions and agencies of the state in the courts, and before all administrative tribunals or bodies of any nature, *in all legal or quasi legal matters, hearings, or proceedings,* and advise all officials, departments, boards, commissions, or agencies of the state in all matters involving legal or quasi legal questions, except those declared by law to be the duty of the prosecuting attorney of any county.

> **43.12.075. Duty of attorney general—Commissioner may represent state.** It shall be the duty of the attorney general, *to institute, or defend, any action or proceeding to which the state, or the commissioner or the board, is or may be a party,* or in which the interests of the state are involved, in any court of this state, or any other state, or of the United States, or in any department of the United States, or before any board or tribunal, *when requested so to do by the commissioner, or the board, or upon the attorney general's own initiative.*

> **43.10.067. Employment of attorneys by others restricted.** No officer, director, administrative agency, board, or

---

[1] While occasionally mentioned throughout the parties' briefs, the underlying action is the subject of a pending appeal and has no bearing on the merits of this case.

commission of the state, other than the attorney general, shall employ, appoint or retain in employment any attorney for any administrative body, department, commission, agency, or tribunal or any other person to act as attorney in any legal or quasi legal capacity in the exercise of any of the powers or performance of any of the duties specified by law to be performed by the attorney general, except where it is provided by law to be the duty of the judge of any court or the prosecuting attorney of any county to employ or appoint such persons.

(Emphasis added.)

¶7 This is an issue of first impression. We have never been squarely presented with an instance of the attorney general refusing to represent a state officer on an appeal. The plain language of the statutes, however, leaves little to question. Under RCW 43.10.040 and 43.12.075, the attorney general has a statutory duty to represent the commissioner. The first section, RCW 43.10.040, states he "shall . . . represent the state" and its agencies "in the courts, and . . . in all legal . . . proceedings." More specifically, RCW 43.12.075 commands the attorney general to "institute, or defend, any action or proceeding . . . when requested so to do by the commissioner." No ambiguity can be found in either of these statutes, and the attorney general has not argued any. This directive requires the attorney general to provide legal representation to the commissioner.

¶8 Moreover, only the attorney general, or an SAAG appointed by the attorney general, may represent the commissioner in legal proceedings since RCW 43.10.067 prohibits the commissioner from hiring outside counsel. Because RCW 43.12.075 directs the attorney general to represent the commissioner pursuant to RCW 43.10.067, the commissioner may not "employ, appoint or retain . . . any attorney . . . to act as attorney in any legal or quasi legal capacity in the . . . performance of any of the duties specified by law to be performed by the attorney general." RCW 43.10.067. If the attorney general could refuse to represent the commissioner, then the commissioner could

be left without any legal representation whatsoever. Such refusal would place agency policy-making decisions with the attorney general, rather than the elected official, board, or administrator who has been delegated that duty.[2] Such intent cannot be found in the relevant statutes. Instead, it appears the commissioner has the choice of one attorney to represent him, and that is the attorney general. The attorney general, however, has no choice but has a statutory duty to represent his client, the commissioner.

¶9 Alternatively, the attorney general argues, if the statute confers a mandatory duty, then he has satisfied that duty in the action at the trial court level. This argument is not persuasive. RCW 43.10.040 states the attorney general shall represent officials in "all legal or quasi legal matters, hearings, or proceedings." Moreover, RCW 43.12.075 specifically states the attorney general shall represent the commissioner "in any court of this state, or any other state, or of the United States." Rather than separate the various stages of litigation, we read these provisions as written: every phase of the litigation, whether trial court or appellate level, is an aspect of one proceeding, and therefore of one continuing duty.

¶10 The attorney general further argues that the clause "or upon the attorney general's own initiative" in RCW 43.12.075 gives him the discretion to affirmatively act over the commissioner's objection, and so must also give him the authority to decline representation, even where requested by the commissioner. We disagree. That statute states that "it shall be the duty of the attorney general, to institute, or defend, any action or proceeding," and no other statute

---

[2] The dissent would instead deny the commissioner, and presumably every other public official, access to the courts based on nothing more than the elected attorney general's judgment, with no recourse for the commissioner regardless of the merits, or importance, of the case. The dangers of such a course of action, absent an expression from either the legislature or voters that such action is intended, should be obvious in a partisan political system such as ours. For example, imagine a Democratic attorney general who refuses to represent a Republican commissioner, merely because of the difference in parties. Under the dissent's view, the commissioner would have neither representation nor remedy.

relieving the attorney general of this responsibility is cited. RCW 43.12.075. The commissioner, more reasonably, replies that this phrase, "upon the attorney general's own initiative," applies only to those instances where neither he nor the Department of Natural Resources is made a party, but the interests of the state are involved. RCW 43.12.075. We agree with the commissioner's interpretation of the statute.

¶11 Finally, the attorney general contends this court has found discretion, despite the word "shall" in a statute, and he therefore has discretion to decide whether and how to respond to a request of representation by the commissioner. In each of the cases cited, however, the statutes at issue were found to confer discretionary authority precisely because each vested the "power to commence actions or institute" proceedings on behalf of the state in the attorney general." *State ex rel. Rosbach v. Pratt*, 68 Wash. 157, 158, 122 P. 987 (1912); *Berge v. Gorton*, 88 Wn.2d 756, 761, 567 P.2d 187 (1977); *see also Boe v. Gorton*, 88 Wn.2d 773, 775, 567 P.2d 197 (1977) (citing *Berge*, 88 Wn.2d 756). Discretionary power in such instances makes sense because the state has no voice with which to request action from the attorney general other than its election of the official who will represent its interests. But none of the cited cases address an instance where a statute, such as RCW 43.12.075, directs the attorney general to represent the commissioner upon the commissioner's request. Each involved a third party seeking to compel the attorney general to institute an action, and none of those third parties could cite to a statute requiring the attorney general's representation as the commissioner can do with RCW 43.12.075. Moreover, "shall" when used in a statute, is presumptively imperative and creates a mandatory duty unless a contrary legislative intent is shown. *Phila. II v. Gregoire*, 128 Wn.2d 707, 713, 911 P.2d 389 (1996); *State v. Krall*, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994). No contrary legislative intent has been offered by the attorney general, so we conclude that the attorney general has a statutory duty to provide the commissioner with legal representation.

576

### Writer of mandamus

*Writ of mandamus*

██ ██ ¶12 This court has original jurisdiction in mandamus with respect to all state officers. CONST. art. IV, § 4. Mandamus is an extraordinary remedy that we grant only if the mandatory act sought to be compelled is not discretionary. *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 598-99, 229 P.3d 774 (2010). Having found that a mandatory statutory duty exists, we turn to whether there is yet some discretion to be found in carrying out that duty. If the attorney general has discretion on whether to represent the commissioner on appeal, no writ can issue.

¶13 Unlike most states, we have determined our attorney general lacks common law power that would allow him the discretion he seeks here. We have previously decided the attorney general's power is determined by the constitution and statutes. *State ex rel. Attorney Gen. v. Seattle Gas & Elec. Co.*, 28 Wash. 488, 68 P. 946, 70 P. 114 (1902). In *Seattle Gas*, the issue was whether the attorney general could bring an action against a party when a statute specifically granted that power to the city's prosecuting attorney. This court stated that "[e]very office under our system of government, from the governor down, is one of delegated powers," and so such powers would be found in the constitution and statutes, not in the common law.[3] *Seattle Gas*, 28 Wash. at 495. We have not been asked to overrule *Seattle Gas*, nor has it been suggested that decision is incorrect and harmful. The attorney general, then, has no free-floating common law discretion to deny the commissioner his appeal given the clear statutory language discussed above.

¶14 At oral argument, the attorney general sought to buttress his position by citing to *Rosbach*, 68 Wash. 157.

[3] On denial of a petition for rehearing, the *Seattle Gas* court qualified its previous common law statement to apply only where power was explicitly given to another constitutional officer. *Seattle Gas*, 28 Wash. 488.

According to the argument, the holding of *Rosbach* gives the attorney general absolute discretion regarding the institution and maintenance of suits. In that case, we examined a statute with language somewhat similar to RCW 43.12.075. That statute required the attorney general to represent the industrial insurance commission when requested. A separate section stated that any default payments owed the commission " 'shall be collected by action at law in the name of the state as plaintiff.' " *Rosbach*, 68 Wash. at 158 (quoting LAWS OF 1911, ch. 74, § 8). An individual sought to compel both the commission and the attorney general to bring such an action, and we held that the commencement of such actions "are matters resting wholly within the discretion of the commission and the attorney general, a discretion which cannot be controlled by mandamus." *Rosbach*, 68 Wash. at 158. We further stated this had always been the case regarding statutes "vesting the power to commence actions or institute proceedings on behalf of the state in the attorney general." *Rosbach*, 68 Wash. at 158. In his arguments before us now, the attorney general fails to recognize that the issue in *Rosbach* was whether an individual could compel such actions. We were not discussing a request to do so by the industrial insurance commission, but by a third party. Given the statutory duties, this holding makes sense. Those duties are expressly owed to the commissioner and not to individuals. This case does not support the argument that the attorney general has discretion to refuse to represent those identified by statute when requested to do so.

¶15 The attorney general also argues that our decision in *State v. Gattavara*, 182 Wash. 325, 47 P.2d 18 (1935), supports his discretionary ability to refuse to represent the commissioner on appeal. There, we considered whether private attorneys hired by the Department of Labor and Industries had the power to institute actions to collect default payments, and held that the statute vested that authority with the attorney general. We assumed without discussion that the attorney general should exercise his

judgment regarding the wisdom of the actions, but we were not faced with a request to institute such actions by the Department. In fact, the attorney general appeared as amicus curiae and was supportive of the private attorneys' actions. Again, this was not a case of a state officer requesting the attorney general to take such action. It merely concerned who had the statutory authority to institute the actions.

¶16 We have, however, repeated on a few occasions that the attorney general's paramount duty is to protect the interests of the people of the state. *Reiter v. Wallgren*, 28 Wn.2d 872, 880, 184 P.2d 571 (1947) (taxpayer must make demand on attorney general to bring suit before taxpayer has standing); *State ex rel. Dunbar v. State Bd. of Equalization*, 140 Wash. 433, 440, 249 P. 996 (1926) (attorney general may bring action to compel other state officers to comply with law). The attorney general argues these cases would allow him to act in the public interest when the public interest is antagonistic to state officers. The cited cases merely recognize that it may become necessary to institute proceedings against a state officer. But here the attorney general would have us place his own concept of the "public interest" above the duty to represent state officers. The statutory duties identified do not support this argument.

¶17 The attorney general correctly argues we have previously held he does not need express statutory authorization for every act. Even without a statute specifically authorizing the attorney general's enforcement of charitable trusts, in *State v. Taylor*, we held that the attorney general, "as representative of the public and particularly of those individuals who may be specially benefited," could maintain the action given his constitutional and statutory authority. *State v. Taylor*, 58 Wn.2d 252, 261, 362 P.2d 247 (1961). In another case we recognized the sum total of constitutional and statutory provisions regarding the attorney general was sufficient, even in the absence of an

express grant, to confer upon the attorney general authority to file an amicus curiae brief. *Young Ams. for Freedom v. Gorton*, 91 Wn.2d 204, 207-08, 588 P.2d 195 (1978) (*YAF*). These cases may support the attorney general's authority to bring such actions in other instances, but again, do not provide the attorney general with a clear grant of discretion necessary to overcome the statutory duty to represent state officers, specifically to the commissioner under RCW 43.12.075, and generally under RCW 43.10.040.[4]

 ¶18 Additionally, the attorney general argues his ability to refuse to pursue an appeal comes from his constitutional role as the state's chief legal officer. The attorney general is independently elected and serves as a check on other government officers and entities. If limited to a traditional attorney-client relationship with those officers, the attorney general's role as that check disappears. This structural argument points to the divided executive branch for evidence that our founders intended to have each office act as a check upon the others. *See Gattavara*, 182 Wash. at 332-33. We have already recognized the attorney general's ability to bring suit against state officers when necessary. *Reiter*, 28 Wn.2d at 879. But there is nothing inherent in this structure that permits the attorney general to refuse to represent state officers when statutorily required to do so. It simply means that he may

---

[4] Indeed, *City of Seattle v. McKenna*, 172 Wn.2d 551, 259 P.3d 1087 (2011), illustrates such an instance. There, we rely on *Taylor* and *YAF* to conclude the attorney general has the discretionary authority, under RCW 43.10.030(1), to represent the State's interest in a multistate action. *McKenna*, 172 Wn.2d at 560-63. Contrary to the dissent's assertions, this case is consistent with *McKenna* because here, in addition to the attorney general's broad constitutional and statutory authority, there is a statute specifically directed to the situation before us. *See, e.g., Kustura v. Dep't of Labor & Indus.*, 169 Wn.2d 81, 88, 233 P.3d 853 (2010) (" 'A specific statute will supersede a general one when both apply.' " (quoting *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 630, 869 P.2d 1034 (1994))).

also institute proceedings against state officers in other situations.[5]

¶19 The PUD, amicus here, additionally argues that because Washington subscribes to the entity model of representation, the attorney general has a corresponding ethical duty to the state as a whole. We have already recognized the attorney general's broader role:

> Inevitably, the attorney general . . . will be charged as a public officer with the responsibility of seeing that both sides of an issue are adequately presented to the court when there is a conflict between state officials or departments, or when there is a question as to whether a state officer, committee, or department is acting in an illegal manner, to the detriment of the public interest.

*Reiter*, 28 Wn.2d at 879. In that case, we assumed the appointment of an SAAG for one of the parties sufficient to protect the state as a whole. However, both sides of an issue cannot be adequately presented where one side lacks legal representation. Moreover, we rely on an adversarial system with the judicial branch in its proper role to determine the merits of such disputes. Nothing about our current model conflicts with the attorney general's ethical obligations.

¶20 Both parties cite to a number of foreign cases in support of their arguments, but none are particularly applicable or persuasive given varying constitutions, statutory authority, structural history, and precedent. *See Manchin v. Browning*, 170 W. Va. 779, 785, 296 S.E.2d 909

---

[5] Moreover, the attorney general, like every lawyer in the state, is bound by RPC 1.2(a), which provides that "a lawyer shall abide by a client's decisions concerning the objectives of representation" and "shall abide by a client's decision whether to settle a matter." If the attorney general feels unable to do so, then he has the authority to appoint an SAAG under RCW 43.10.065 so the state officer is still provided with counsel. The attorney general argues that an appointed SAAG would have the same ethical obligations as the attorney general, and so would also be precluded from pursuing a harmful appeal. But RPC 1.13(h) provides a private lawyer's client would be only the particular agency, not the broader governmental entity, unless otherwise notified by the chief legal officer of the broader governmental entity. This implies that the attorney general *may* enlarge the scope of the private lawyer's attorney-client relationship but need not do so.

(1982) (finding no common law power based on attorney general's prior status as judicial officer, therefore the attorney general must defer to officer's decision regarding merits of litigation). *But see State ex rel. McGraw v. Burton*, 212 W. Va. 23, 36, 569 S.E.2d 99 (2002) (narrowing holding in *Manchin* by granting the attorney general wide oversight in all litigation, including requiring meaningful consideration of effects of legal policy and positions); *People ex rel. Deukmejian v. Brown*, 29 Cal. 3d 150, 155, 624 P.2d 1206, 172 Cal. Rptr. 478 (1981) (attorney general may not take a position adverse to state officer without written consent (29 Cal. 3d at 154-55); no common law authority when in conflict with constitutional or statutory provisions (29 Cal. 3d at 157)). The Ninth Circuit, citing to *Berge* and *Boe* mentioned above, stated whether to bring an action was solely within the attorney general's discretion, but the real issue there was procedural—whether the attorney general could bring an interlocutory appeal of a contempt order. *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 747 F.2d 1303, 1305 (9th Cir. 1984) (finding congruence of interest between state and attorney general given attorney-client relationship). Nor do we rely on the Ninth Circuit to determine state law issues. Nothing about these cases, or the others cited in the parties' briefs, is helpful in providing the grant of discretion the attorney general would need to deny the commissioner's request.

¶21 The attorney general points out that many aspects of litigation are discretionary, and therefore issuing one initial writ will be insufficient. *See Rosbach*, 68 Wash. at 159 (court would not oversee pleadings, evidence, objections, and arguments, so writ insufficient to compel discretionary litigation). The commissioner is satisfied that if a writ issues compelling the attorney general to remove the "contingency" status from the appeal, the attorney general's ethical duties will ensure competent and diligent representation. *See* RPC 1.1, 1.3. We have previously held, in *Blue Sky Advocates v. State*, 107 Wn.2d 112, 727 P.2d 644 (1986),

that the attorney general has some discretion in determining how to carry out the representation. *Blue Sky Advocates*, 107 Wn.2d at 119 (Attorney general has discretion in exercise of duties as counsel for the environment.). The discretion that exists is within the method of representation, typical of any attorney-client relationship, allowing the attorney control, in concert with the client's authority, over such things as whom to depose and what arguments to make. But this strategical discretion within the representation does not control the question of whether such representation must be provided in the first instance.

¶22 None of the case law cited confers on the attorney general the discretion he seeks to refuse to pursue an appeal despite his client's directive that he do so. Nor does the attorney general's constitutional role counsel otherwise. Given the mandatory language of the statute and the prohibition of hiring outside counsel, no discretion is involved, and representation is required. Therefore, we grant the writ.

*Attorney's fees*

¶23 The commissioner seeks attorney's fees under RCW 4.84.185.[6] Reasonable expenses, including fees, may be awarded if we find the defense was frivolous and advanced without reasonable cause. A frivolous action is one that cannot be supported by any rational argument on the law or facts. *Clarke v. Equinox Holdings, Ltd.*, 56 Wn. App. 125, 132, 783 P.2d 82, *review denied*, 113 Wn.2d 1001, 777 P.2d 1050 (1989). We hold that the attorney general's position is not frivolous, but involves a good faith argument of statutory and constitutional interpretation. Therefore, we deny the commissioner attorney's fees under RCW 4.84.185.

---

[6] The statute provides, in pertinent part, "In any civil action, the court having jurisdiction may, upon written findings by the judge that the . . . defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such . . . defense." RCW 4.84.185.

## CONCLUSION

¶24 Under the statutes, the responsibility is clear. Because we find no discretion within this duty, we issue the writ and direct the attorney general to provide the commissioner with legal representation.

MADSEN, C.J.; ALEXANDER, CHAMBERS, OWENS, and FAIRHURST, JJ.; and ELLINGTON, J. PRO TEM., concur.

¶25 ALEXANDER, J. (concurring) — I am of the view that the attorney general has a mandatory duty, in almost every instance, to pursue an appeal at the request of an elected state official such as the commissioner of public lands. The attorney general should, however, have discretion to decline such representation if the appeal is frivolous. I say that because our attorney general is a member of the Washington State Bar Association and, as such, he is an officer of the courts of this state, a separate branch of government.[7] The attorney general must, therefore, abide by the oath of attorney and the rules of professional conduct promulgated by the Supreme Court.

¶26 The oath that all Washington attorneys must take provides that in civil cases a lawyer shall not "counsel, or maintain any suit, or proceeding, which shall appear to me to be unjust, or any defense except as I believe to be honestly debatable under the law." APR 5(e). In addition, RPC 3.1 says that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous." We have stated that an appeal is frivolous if "the

---

[7] Although the state constitution, article III, section 21, indicates that the attorney general is "the legal adviser of the state officers," there is no provision specifically requiring the attorney general to be a member of the bar of the state of Washington. Our current attorney general, like all of his predecessors, is, however, a member of the state bar.

appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal." *Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hearings Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010) (citing *Tiffany Family Trust Corp. v. City of Kent*, 155 Wn.2d 225, 241, 119 P.3d 325 (2005)); *see* RAP 18.9(a).

¶27 Here, the commissioner of public lands sought to have the attorney general undertake an appeal of a judgment of the superior court that aggrieved the commissioner and the department of natural resources. Because in rejecting the request the attorney general has not asserted that such an appeal would be frivolous, he should have acceded to the request. I, therefore, concur in the result the majority reaches.

¶28 STEPHENS J. (dissenting) — This case boils down to a dispute over litigation tactics between two independently elected state officers. The question is whether the Washington Supreme Court should referee such a dispute. The majority believes we should, on the premise that the attorney general is no more than retained counsel for the commissioner of public lands, owing a mandatory, nondiscretionary duty to follow the commissioner's wishes. I respectfully dissent because this view of the office of the attorney general fails to appreciate the significant discretion involved in serving as legal counsel for the State and its officers. This dissent focuses on three principal errors in the majority opinion. First, it fundamentally misunderstands the authority and duty of the attorney general under our constitution and the relevant statutes. Second, it vastly expands the circumstances under which this court will grant a writ of mandamus, essentially using the writ to choose sides in a dispute between two officers of the executive branch. Finally, the majority's analysis is inconsistent with our opinion in a companion case, *City of Seattle v. McKenna*, 172 Wn.2d 551, 259 P.3d 1087 (2011).

1. The Attorney General Exercises Broad Discretion in Representing the Legal Interests of State Officers

¶29 The office of attorney general is established under article III, section 21 of the Washington Constitution. That provision states that "[t]he attorney general shall be the legal adviser of the state officers, and shall perform such other duties as may be prescribed by law." CONST. art. III, § 21. As an independently elected officer, the attorney general does not serve at the will of other executive officers. Rather, he answers to the people. The attorney general's independence under our constitutional scheme reflects a conscious decision by the framers of the Washington Constitution to counter the accumulation of executive power in any single official. *See State v. Gattavara*, 182 Wash. 325, 332-33, 47 P.2d 18 (1935). This unique constitutional role as "the legal adviser of the state officers" is complemented by statutes prescribing the attorney general's duties in particular circumstances. *See, e.g.*, RCW 43.10.030(2) (stating that the attorney general "shall . . . [i]nstitute and prosecute all actions and proceedings . . . which may be necessary in the execution of the duties of any state officer"), .040 (stating that the attorney general "shall also represent the state . . . in the courts . . . in all legal or quasi legal matters").

¶30 The majority declares that this case may be resolved by looking only to "a handful of statutes." Majority at 572. Specifically, the majority finds dispositive that RCW 43.12.075 uses the word "shall" in describing the attorney general's role vis-á-vis the commissioner of public lands. But this interpretation of RCW 43.12.075 ignores our long-held recognition that the attorney general may exercise broad discretion as the state official charged with directing the course of litigation. *Blue Sky Advocates v. State*, 107 Wn.2d 112, 118-19, 727 P.2d 644 (1986); *Boe v. Gorton*, 88 Wn.2d 773, 776, 567 P.2d 197 (1977); *Berge v. Gorton*, 88 Wn.2d 756, 761, 567 P.2d 187 (1977). It defies

common sense to suggest that RCW 43.12.075 eliminates the attorney general's discretion to decide whether to pursue an appeal. How can the attorney general adequately fill his constitutional role as "legal adviser of the state officers" yet be utterly powerless to guide litigation?

¶31 A long line of cases starting with *State ex rel. Rosbach v. Pratt*, 68 Wash. 157, 122 P. 987 (1912), confirms that the attorney general does, and must, have discretion. *Pratt* involved a mandamus action to compel the attorney general to recover unpaid fees from a company under the industrial insurance act. The statute defining the attorney general's responsibilities, which is nearly identical to RCW 43.12.075, stated, " 'The attorney general shall be the legal adviser of the department, and shall represent it in all proceedings, whenever so requested by any of the commissioners [of the Industrial Insurance Commission].' " *Id.* at 158 (quoting Laws of 1911, ch. 74, § 20). We explained that we could find no "requirement [in the statute] of absolute duty on the part of the commission or attorney general to bring actions against each and every delinquent employer." *Id.* Focusing specifically on the language of the statute, we said that "[a]uthority to commence such actions is conferred, but not compelled." *Id.* We held that "commencement of actions at law to enforce the payment of delinquent assessments, against whom and when they shall be brought, are matters resting wholly within the discretion of the commission and the attorney general, a discretion which cannot be controlled by mandamus." *Id.*

¶32 Since *Pratt*, we have consistently recognized that the duty imposed by statute on the attorney general is to represent state agencies, but the attorney general retains broad discretion in doing so. In other words, the statutes require the attorney general to exercise his discretion. *See Gattavara*, 182 Wash. at 330 (noting that the attorney general "must exercise his judgment" on whether to initiate action to collect industrial insurance premiums); *Berge*, 88 Wn.2d at 761 (explaining that statute stating the attorney

general "shall" bring action imposed only a duty to " 'exercise discretion' "); *Boe*, 88 Wn.2d at 775 (same); *Young Ams. for Freedom v. Gorton*, 91 Wn.2d 204, 210, 588 P.2d 195 (1978) (recognizing that the attorney general "may exercise broad discretion in the exercise of his duties"); *Blue Sky Advocates*, 107 Wn.2d at 119 (noting that because the attorney general has discretion in performance of duties, his actions are reviewable only for abuse of discretion).

¶33 In addition to misreading this line of precedent, the majority wrongly interprets RCW 43.12.075 as establishing a traditional attorney-client relationship between the attorney general and the commissioner. Majority at 580 n.5, 582. Yet both Washington's Rules of Professional Conduct and the Model Rules of Professional Conduct recognize that the attorney general's unique responsibilities alter the traditional attorney-client framework:

> Under various legal provisions, including constitutional, statutory and common law, the responsibilities of government lawyers may include authority concerning legal matters that ordinarily reposes in the client in private client-lawyer relationships. For example, a lawyer for a government agency may have authority on behalf of the government to decide upon settlement *or whether to appeal from an adverse judgment. Such authority in various respects is generally vested in the attorney general* and the state's attorney in state government, and their federal counterparts, and the same may be true of other government law officers. Also, lawyers under the supervision of these officers may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances where a private lawyer could not represent multiple private clients. *These Rules do not abrogate any such authority.*

RPC scope 18 (emphasis added); Model Rules of Prof'l Conduct scope 18 (2011) (emphasis added). As discussed above, under Washington's constitutional and statutory framework, it is the attorney general and not some other state official who is charged with directing the course of litigation. Though the rules defer to the attorney general's

unique responsibility to represent the public interest, the majority eliminates any such deference by casting the attorney general in the role of any other private-sector lawyer.

### 2. Granting a Writ To Compel the Attorney General To File an Appeal against His Judgment Vastly Expands Mandamus

¶34 Mandamus is an "extraordinary remedy," and we "have placed strict limits on the circumstances under which we will issue the writ to public officers." *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 598-99, 229 P.3d 774 (2010); *Walker v. Munro*, 124 Wn.2d 402, 407, 879 P.2d 920 (1994) (noting that "mandamus is an extraordinary writ"). Mandamus is available only to compel a state officer to undertake a mandatory, nondiscretionary duty. *SEIU Healthcare*, 168 Wn.2d at 599. A duty is nondiscretionary or ministerial when " 'the law prescribes and defines the duty to be performed with such precision and certainty *as to leave nothing* to the exercise of discretion or judgment.' " *Id.* (internal quotation marks omitted) (quoting *State ex rel. Clark v. City of Seattle*, 137 Wash. 455, 461, 242 P. 966 (1926)). Thus, while a duty may be mandatory, it is not subject to mandamus unless the duty is also nondiscretionary or ministerial—that is, there is a complete absence of discretion in the officer's performance of the duty. *Id.*; *Brown v. Owen*, 165 Wn.2d 706, 725, 206 P.3d 310 (2009) ("Where we find a mandatory duty, we must further determine whether that duty is ministerial or discretionary in nature.").

¶35 The majority sidesteps the "strict limits" that have made mandamus an "extraordinary remedy" by construing the attorney general's authority to direct litigation as entirely nondiscretionary. The majority says that our cases recognizing the attorney general's discretion are distinguishable because they did not involve the situation here—where a state officer, rather than a third party, seeks to

command action by the attorney general. But in none of the cases the majority attempts to distinguish did the court conclude the duty was discretionary because the request to act came from a third party. Rather, we have always found the duty discretionary for the simple reason that discretion inheres in the role of attorney general as the state official charged with directing litigation. *See Pratt*, 68 Wash. at 158; *Young Ams. for Freedom*, 91 Wn.2d at 210; *Blue Sky Advocates*, 107 Wn.2d at 118-19. While the majority's distinction may matter to the issue of standing, once standing is established, either the duty to be exercised is discretionary or it is not. The majority fails to explain how the identity of the party seeking the writ has any bearing on whether the duty to direct litigation in the best interest of the public is nondiscretionary in nature.

¶36 If we compel the attorney general to file an appeal on the grounds that it is a mandatory, nondiscretionary duty, there is no limiting principle that would allow us to avoid mandamus where state officers disagree on other steps in litigation. What if the attorney general wants to settle a lawsuit and the commissioner does not? What if the commissioner insists on pursuing a claim that the attorney general believes is unwarranted? In denying the request for mandamus in *Pratt*, we recognized this very problem:

> "[T]o compel [the attorney general], against his will and contrary to his judgment, to merely *commence* an action would be an idle thing in the absence of power to compel him to prosecute it to final determination; and such power is not contended for by appellant. And, indeed, there could be no practicable exercise of such power. The court granting the writ of mandate could not follow the [attorney general] through the case, and see to it that he filed proper pleadings, offered sufficient evidence, made necessary objections to evidence offered by [opposing counsel], used proper arguments and authorities in discussing questions raised before the court or jury, and conducted the trial [and appeal] with reasonable care and diligence."

68 Wash. at 159 (quoting *Boyne v. Ryan*, 100 Cal. 265, 267, 34 P. 707 (1893)).

¶37 The majority asserts that the commissioner "is satisfied" by the writ here and will rely on the attorney general thereafter to meet his ethical obligations under the Rules of Professional Conduct. Majority at 581. But this again wrongly assumes that the attorney general serves in a capacity that is "typical of any attorney-client relationship." Majority at 582. The rules themselves clarify that the attorney general, by virtue of his unique constitutional and statutory role, is anything but a typical private attorney. The majority sees no risk of persistent writ requests every time the attorney general exercises discretion because it obviates that discretion. Under the majority's analysis, the attorney general's role is reduced to asking "how high" when the state officer he represents says "jump."

¶38 Simply stated, once we start down this path, we trivialize the writ of mandamus and vastly expand our role in resolving disagreements between independently elected officers in another branch of government. I believe this sets up an ill-advised test of the limits of our authority. It is not only unwise, but potentially destructive to the very system of checks and balances the framers of our constitution created.[8]

3. The Majority's Analysis Is Inconsistent with Our Decision in *City of Seattle v. McKenna*

¶39 This case was heard on the same day as a similar case, *McKenna*, 172 Wn.2d 551. There, the city of Seattle sought a writ of mandamus to compel the attorney general

---

[8] This is not to say that the attorney general's actions are never subject to review. A writ may issue if the attorney general fails to make any decision or if the decision constitutes an abuse of discretion—i.e., a " 'willful and unreasoning action, [taken] without consideration and in disregard of facts or circumstances.' " *Boe*, 88 Wn.2d at 775 (quoting *Lillions v. Gibbs*, 47 Wn.2d 629, 633, 289 P.2d 203 (1955)); *Blue Sky Advocates*, 107 Wn.2d at 117-18 (quoting *Berge*, 88 Wn.2d at 762). The commissioner does not allege that the attorney general's refusal to pursue the appeal was an abuse of discretion.

to withdraw from federal litigation in Florida. We refused to grant the writ in light of the broad authority of the attorney general as the chief legal officer of the state. We traced this authority from its constitutional roots to some of the same statutes defining the attorney general's authority that are at issue in this case. *See McKenna,* 172 Wn.2d at 560 (noting that RCW 43.10.030 "confers broader authority than the plain text indicates"). Rejecting the argument that the attorney general was required to withdraw Washington from the federal litigation, we stated, "The people of the state of Washington have, by statute, vested the attorney general with broad authority." *Id.* at 564. Moreover, relying on *Boe* and *Berge,* we recognized that "[w]here the attorney general possesses authority to initiate litigation, that authority is generally discretionary." *Id.* at 556.

¶40 I find it impossible to reconcile the majority's analysis here with our decision in *McKenna.* First, the majority here reads the statutes defining the attorney general's authority, which speak in terms of what the attorney general "shall" do, as mandatory and nondiscretionary. The *McKenna* decision, by contrast, acknowledges that the term "shall" has been construed to impose "only a discretionary duty." *Id.* at 562 n.3. Recognizing this inconsistency, the *McKenna* decision suggests that while "the term 'shall' generally creates a mandatory duty, case law has established that, in the context of RCW 43.10.030, the use of 'shall' creates only a discretionary duty." *Id.* (citation omitted). This distinction is artificial. If the attorney general truly has discretion as the chief legal officer of the State despite what RCW 43.10.030 says he "shall" do, then the attorney general must likewise have discretion in the face of similar statutes that purport to limit his discretion. Statutes cannot be read in isolation.

¶41 Second, while the majority here places the attorney general in a traditional attorney-client relationship with the state officers he represents, the *McKenna* decision

rejects this framework. We say in *McKenna* that the attorney general has "discretionary authority to act in any court, state or federal, trial or appellate, on 'a matter of *public* concern,' provided that there is a 'cognizable common law or statutory cause of action.' " *McKenna*, 172 Wn.2d at 562 (footnote and citation omitted) (emphasis added) (quoting *State v. Taylor*, 58 Wn.2d 252, 256-57, 362 P.2d 247 (1961)). Moreover, the *McKenna* decision rejects the argument that "where the governor and attorney general disagree, the attorney general may not proceed in the name of the State." *Id.* at 563. This view is at odds with the majority's analysis. Reading the two cases together, it is unclear why a writ of mandamus is appropriate to force the attorney general to follow the commissioner's wishes in this litigation but is inappropriate in *McKenna*.[9]

¶42 Consistent with our decision in *McKenna*, I would recognize that the attorney general's duty to represent state officers in litigation is generally not subject to a writ of mandamus. While the attorney general's role to provide legal counsel is mandated by statute, it fundamentally involves discretion and legal judgment entrusted to an independently elected official. The statutory duty is for the attorney general to exercise discretion. This is no mere ministerial task subject to the extraordinary writ of mandamus.

¶43 I respectfully dissent.

SANDERS, J. PRO TEM., concurs with STEPHENS, J.

Reconsideration denied February 7, 2012.

---

[9] The *McKenna* decision leaves for another day "the issue of what result the Washington Constitution compels where the governor disagrees with the attorney general's discretionary decision to initiate litigation and seeks to preclude the attorney general's action" by becoming a party to a mandamus action. *McKenna*, 172 Wn.2d at 564. Whatever the answer may be under the constitution when the governor is a party to the litigation, at a minimum the Rules of Professional Conduct do not require the attorney general to follow the governor's wishes. If they did, the governor's opposing view by amicus brief in *McKenna* should be enough to control the attorney general's participation in the federal litigation.